O'DELL TIDWELL *et al.*, Plaintiffs-Appellees, *v.* TOYOTA AUTO MART, INC., Defendant-Appellant.

Second District   No. 77-16

Opinion filed April 21, 1978.

Sam J. Cannariato, of Rockford, for appellant.

William H. Flaherty, of Tuite, Morrissey, Gesmer & Finnegan, of Rockford, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiffs, O'Dell Tidwell, Gary Pollock and Michael Bruce, each brought separate actions against Toyota Auto Mart, Inc., their former employer, to recover bonus payments allegedly due them. The cases were consolidated for a bench trial, following which the court entered judgments in favor of each of the plaintiffs. Toyota appeals from the denial of its post-trial motion and plaintiff Bruce has filed a counterappeal, alleging that the amount of the judgment in his favor was inadequate.

All three plaintiffs testified that they were employed under oral contracts. Tidwell and Pollock testified that they were employed as salesmen and that they were to receive a commission, plus a bonus which varied from $5 to $7 per car sold depending on how long they had been employed by Toyota. The bonus was to be paid around Christmas, provided they did not quit or get fired. Both Tidwell and Pollock admitted that after they went to work for Toyota they each signed a "Longevity Bonus Record" card, the relevant portion of which provided:

"This is a record of your Longevity Bonus.

It is agreed that this Bonus is not a part of your regular compensation but is an added incentive that the Company elects to give you *at their descretion* for extra effort, a fine and loyal attitude and high efficiency in the performance of the duties of your position.

It is also agreed that *you must be continuously employed throughout the year to be eligible to draw this Bonus.*

The Company elects to pay this Bonus approximately December 22nd." (Emphasis added.)

Pollock's testimony concerning the terms of his employment was generally supported by that of plaintiff Bruce, the sales manager who had hired him. As to his own employment as sales manager, Bruce testified that he was to receive a salary plus $5 for every car sold by Toyota, which was to be put into a fund and divided every year between the sales managers at approximately Christmas. Bruce admitted that when he had first been employed by Toyota as a salesman in 1972 he had signed a memorandum which provided, with regard to the bonus, that "you must be an employee of Toyota Auto Mart, Inc. at end of calander [*sic*] year." He also testified that he had quit and been rehired twice after that time, and that he had not signed any documents at all on the subsequent occasions.

All parties to this action seem to be in agreement that the relevant "year" for purposes of payments of bonuses ran from September 1, 1974, to August 31, 1975 (hereinafter sometimes referred to as the 1974-75 bonus year). They also agree that all plaintiffs were continuously employed by Toyota during this time period, until August 11, 1975, when the assets of Toyota were transferred to Wigglesworth. All employees of Toyota were

apparently given final checks at that point. Thereafter plaintiffs went to work for Wigglesworth, and some other former employees of Toyota went to work for Frontier Ford.

Toyota presented only one witness, who had apparently been its assistant comptroller. He testified that so far as he knew all employees signed "Longevity Bonus Record" cards, which were to be retained by them, but admitted he had never seen such cards belonging to any of the plaintiffs. He also testified that some of Toyota's former employees did receive a bonus for the period in question, even though they were not employed by Toyota past August 11, 1975.

The trial court made a number of findings which are relevant to this case. Although specifically finding that the "Longevity Bonus Record" cards constituted part of the employment agreement between plaintiffs Tidwell and Pollock and Toyota, the court specifically declined to find that these embodied the entire agreement between the parties, noting, in part, that the cards did not state the type of bonus or the year involved. In addition, the court relied heavily upon the principle that courts abhor forfeitures and will apply a rule of fundamental fairness and justice in determining whether the forfeiture should be sustained.

Toyota's contention on this appeal is that all of the plaintiffs' rights to a bonus are controlled by the terms of the "Longevity Bonus Record" cards and that plaintiffs are barred from receiving any bonus thereunder. Toyota interprets the cards to mean,

> "Clearly the employee must be employed throughout the year to be eligible. Even then the company has discretion in determining who will receive the bonus payments."

Plaintiffs, on the other hand, argue that they were involuntarily terminated simply because their employer chose to sell its assets 20 days before the end of the year and that principles of equity and fairness should be applied to prohibit the employer from depriving them of their bonuses under such circumstances.

Both sides have cited various cases which they deem supportive of their particular arguments. Although we have examined those cases, we find none of them entirely dispositive of the question of whether plaintiffs are, under their employment contracts, entitled to the bonuses awarded to them. The general rule to be applied in these cases, however, is well established.

> "In the absence of special considerations, it seems reasonable to hold, as several of the cases cited below do hold, that, assuming that there is a valid and enforceable promise through the offer of a bonus and acceptance by the employee's continuing in the service, if the employment is terminated by mutual consent of the parties or by the act of the employer through no fault of the employee, the

latter should be entitled to a proportionate share of the bonus, according to the time served, even though there was no time fixed for the duration of the employment, and it could, therefore, be terminated at will." Annot., 28 A.L.R. 346 (1924).

■■ It is undisputed that this is a case in which the termination of employment was due solely to the act of the employer deciding to sell its assets 20 days before the end of the normal bonus year. There is nothing in the record herein which indicates that the termination of employment was due in any way to the fault of the employee or that, absent the decision by Toyota to sell its assets, the plaintiffs would not have been retained as employees through the end of August 1975. Therefore, plaintiffs are entitled, under the general rule, to the amount of bonuses earned by them up to August 11, 1975, unless the terms of their employment contract, including the "Longevity Bonus Record" card, are such as to deprive them of these bonuses. The oral employment contracts herein, to the effect that the bonuses would be paid unless the plaintiffs got fired or quit, furnish no bar to recovery of the bonuses.

■■ Toyota takes the position that the portion of the "Longevity Bonus Record" cards reading, "* * * you must be continuously employed throughout the year to be eligible to draw this Bonus," constitutes a condition precedent and that plaintiffs are barred from receiving any bonuses because they were not employed on August 31, 1975, the end of the 1974-75 bonus year. We find, however, that Toyota is attempting to read into this statement terms which are not there. The card requires only continuous employment throughout the year. Plaintiffs were continuously employed until their employer, Toyota, chose to end the year 20 days early by selling its assets. There was no requirement that the employee must be employed on the last day of the 1974-75 bonus year. Toyota, which had apparently imposed such a requirement as recently as 1972, chose not to insert it in these agreements. We will not write into these agreements an additional term for the benefit of Toyota which Toyota itself did not choose to include. In this regard, the agreements before us differ substantially from those involved in *Keefner v. Super X Drugs* (1974), 21 Ill. App. 3d 394, 315 N.E.2d 35, and *Nogee v. Neisner Brothers, Inc.* (1953), 351 Ill. App. 166, 114 N.E.2d 463.

Indeed, we have been unable to find any case exactly like this one. It is worthy of note, however, that in a case involving a written contract which, unlike the contract herein, did require employment on a specific day, the Court of Appeals of Alabama found that requirement was not a bar to recovery of a proportionate share of the bonus. (*American Security Life Insurance Co. v. Moore* (Ala. App. 1954), 72 So. 2d 132.) In that case, as in this one, the employer chose to cease doing business less than a month before the date when the bonus was normally earned.

■■ We turn now to the argument of Toyota that even after eligibility was established by continuous employment the company still had discretion as to who would receive bonus payments. We find that this argument is not supported by the terms of the agreement or the evidence. We note that the agreement first purports to be a "record" of the bonus. The discretionary language appears in the next paragraph, mentioning that the company "elects" to give this bonus "at their discretion." The final two paragraphs speak of the employee "drawing" the bonus and the company "electing to pay" the bonus on a specific date. Another portion of this card had spaces in which the amounts of bonuses earned were to be periodically recorded and, according to the testimony herein, this was done monthly. The testimony further established that the amount of the bonuses varied only with regard to length of service. There was no testimony which indicated that Toyota at any time in its previous history had ever exercised any "discretion" to deny payment of bonuses to employees who completed a year. Rather, the testimony was to the effect that the rates were set and the employees who were employed throughout the year received the set rates. Under these circumstances we believe that the mention in the card of the company electing at their discretion to give the employee a bonus refers to the initial decision to allow that employee to be a part of the company's bonus program. This is supported by the arrangement of the card itself, since the discretionary language does not appear in the paragraph in which the company speaks of paying the bonuses. In this regard the contractual provisions at issue herein are quite different than those involved in *Mosow v. National Lock Co.* (1970), 119 Ill. App. 2d 232, 255 N.E.2d 500.

For these reasons, the judgment of the trial court that plaintiffs were entitled to bonuses on the cars sold up to August 11, 1975, was correct.

We turn now to the argument of plaintiff Bruce that the amount of damages awarded to him was clearly inadequate. The only testimony on this issue was from the plaintiff himself. On direct examination he testified that he did not have any specific figures but thought that Toyota sold approximately 100 cars a month. On cross-examination he admitted that this was simply an estimation on his part and that he had no records indicating what was sold. The only other testimony on the matter of cars sold came from plaintiffs Tidwell and Pollock with regard to the cars they personally sold and for which they were claiming a bonus. There was, however, some general testimony indicating that there were other salesmen, but not how many, or the number of their sales. The trial court awarded plaintiff Bruce a bonus based only upon the cars sold by plaintiffs Tidwell and Pollock.

■■ Plaintiff Bruce contends that he adequately calculated his damages from the best information available to him, and that the exact record of

sales was in the exclusive possession of the defendant. Based upon this, he apparently contends that the burden of proof as to the amount of monies due him should have been shifted to the defendant simply because plaintiff did not have the relevant information. Plaintiff, however, has not cited, and we are not aware of, any case in which the burden of proving the extent of a plaintiff's claim for damages has ever been shifted to the defendant. In addition, plaintiff clearly overlooks the fact that the relevant information was available to him. Supreme Court Rules 201 and 214 (Ill. Rev. Stat. 1973, ch. 110A, pars. 201, 214) provide for the discovery of documents in the possession of opposing parties. Rule 216 (Ill. Rev. Stat. 1973, ch. 110A, par. 216) provides for admissions of fact and admissions of the genuineness of documents. Likewise, section 62 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 62) provides for the issuance of a subpoena duces tecum. Plaintiff, however, chose not to utilize these procedures.

*Laudeman v. Beyler* (1944), 324 Ill. App. 116, 57 N.E.2d 518, upon which plaintiff relies, is no help to him. In that particular case the court held that the trial court was warranted in disallowing any but nominal damages for unfair competition, due to lack of proof by the claimant of his lost profits. In addition, it has been held in this State that where damages are susceptible of proof in dollars and cents, direct and tangible proof must be offered. (*Ralph v. Karr Manufacturing Co.* (1974), 20 Ill. App. 3d 450, 458, 314 N.E.2d 219, 225; *Leon v. Thorlief Larsen & Son, Inc.* (1971), 133 Ill. App. 2d 911, 913, .272 N.E.2d 799, 801.) Based upon the evidence in this record, the trial judge was fully justified in awarding plaintiff Bruce a bonus based only upon the sales of cars actually proven.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER and WOODWARD, JJ., concur.