THE PEOPLE *ex rel.* GEORGE PETERS, Chairman of the Illinois Capital Development Board, Plaintiff-Appellant, v. MURPHY-KNIGHT *et al.*, Defendants (Chester Jensen and Company, Inc., Defendant-Appellee).

First District (5th Division)   No. 1—90—1982

Opinion filed June 4, 1993.

Roland W. Burris, Attorney General, of Springfield (James Carroll, Deborah Gibula, and Brian Farley, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Jenner & Block, of Chicago (Keith Bode, Joseph Bisceglia, and Gabrielle Sigel, of counsel), for appellee.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

This appeal arises from the dismissal pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) of count X of plaintiff's complaint for damages arising from the design, manufacture and installation of the heating, ventilation and air conditioning (HVAC) system in the State of Illinois Center (SOIC) in Chicago.

The first nine counts of plaintiff's complaint, which are incorporated by reference into count X, seek recovery against the architects, engineers, construction managers, the general contractor and several subcontractors and materialmen, under the theories of professional malpractice, breach of contract, and breach of express and implied warranties. Count X seeks recovery under a theory of fraud from

Chester-Jensen, which supplied, through a subcontractor, thermal banks, or ice builders, for the HVAC system.

Among the allegations from counts I through IX incorporated into count X are the following. In March 1981, the Capital Development Board (hereafter CDB) awarded a contract to furnish and install the HVAC system for the SOIC, to Economy Mechanical Industries of Illinois (hereafter EMI), a plumbing, heating and air conditioning contractor. Under the provisions of its contract with CDB, EMI was to furnish eight thermal banks and ancillary equipment meeting the State's criteria.

On March 30, 1981, Chester-Jensen submitted a proposal to EMI for thermal banks and ancillary equipment for the HVAC system. In a submittal letter accompanying the proposal, James Donovan wrote that he was presenting Chester-Jensen's "written proposal covering the eight (8) Ice Builders, as called for in the specifications." The proposal stated:

> "We propose to furnish the equipment specified in the following, and further described in the enclosed literature:
> *Model:* XM—14—14—100, eight (8) required.
> *Capacity:* 100,000 pounds of ice at a 2½ inches ice thickness, (1200 tons latent storage)."

The literature referenced in the proposal was a brochure from Chester-Jensen entitled "Air Agitated Ice Builders" which described the principles underlying the use of ice builders as an economical and efficient method of cooling, and listed various models of ice builders offered by Chester-Jensen. The brochure included a model M—14—14—100, but did not list model XM—14—14—100 as proposed by defendant.

EMI entered into a subcontract agreement with R&D Development Company, Inc. (hereafter R&D), a corporation engaged in the piping, heating, and plumbing business, for the purchase and installation of the thermal banks. EMI issued a purchase order to R&D for the purchase of eight thermal banks and ancillary equipment, and R&D, in turn, purchased the thermal banks from Chester-Jensen. The thermal banks were delivered in the spring of 1982 and installed in the SOIC sometime thereafter.

Tenants began to move into the SOIC in early 1985. That summer and the next, extremely high temperatures caused by "an inadequately designed and defectively installed and constructed air conditioning system" made the building "virtually uninhabitable." Damages suffered as a result of the high temperatures include the expenditure of at least $10 million on modifications and repairs to the system.

Plaintiff also suffered other damages of at least $5 million as a result of the extreme heat in the building, including lost rent from commercial tenants, lost work days from State employees who became ill as a result of the heat, lost productivity from State employees and excessive electrical consumption caused by the widespread use of portable electrical fans by employees and tenants.

In count X, plaintiff alleges that defendant represented in its proposal and March 30, 1981, letter to EMI, that defendant's equipment was "capable of building one hundred pounds of ice per thermal bank in a uniform thickness of 2½ inches along each refrigerant coil, in a period of twelve hours." These parameters constituted "Performance Specifications" developed by the CDB which proposed equipment was required to meet. Those performance specifications included the following concerning the thermal banks:

"Performance: Each of the 8 thermal banks shall be capable of making 100,000 pounds of ice in 2-½ inch thickness on the coils in 12 hours under the following conditions:

1. Initial water temperature: 42F
2. Refrigerant R-22 with 3:1 overfeed
3. Evaporating temperature: 18F
4. Nominal bank size: 10 feet high, 10 feet wide, 40 feet long."

Plaintiff further alleged that defendant's own literature represented that the thermal banks would perform according to the CDB's performance specifications. The literature included the following:

"STANDARD RATING DATA

1. All ice builders are rated at 1000 pounds of ice per ton of refrigeration with nominal 12 hour building time. This means normal freezing or evaporation rate is 12,000 BTU per hour for 12 hours time to build each 1000 pounds of ice. Evaporation is usually at 20° F (3 psig.) Ice Builder capacity is based on 2½ ice thickness.

2. Maximum evaporation rate with agitation is approximately 200% of nominal rating. At maximum evaporation rate normal Ice Builder capacity could be realized in approximately 6 hours."

Count X further alleged that defendant knew both at the time it made the above representations and when the equipment was delivered that its equipment could not meet the performance specifications set forth by the CDB. Plaintiff alleged that this knowledge is shown by a letter sent by defendant in November 1981 to another contractor concerning thermal banks proposed for a different project. In that let-

ter, defendant wrote, "In our estimation, it is doubtful that you could recover the full complement of the Ice Builder in 12 hours when that full capacity requires a thickness of 2½ inches."

The complaint further alleged that plaintiff was a third-party beneficiary of the contract between EMI and defendant, and that these misrepresentations were made for the purpose of inducing EMI to purchase defendant's thermal banks. Plaintiff also alleges that it purchased the thermal banks in reliance on defendant's misrepresentations.

Finally, plaintiff alleged that

"the thermal banks, as installed, did not meet the Performance Specifications *** in numerous ways, which included, but were not limited to the following:

a. The thermal banks were incapable of building 100,000 pounds of ice in a 12 hour time period; and

b. The thermal banks were incapable of building ice in a uniform 2½ inches thickness along the refrigerant coils."

In addition to the other damages listed above, the complaint sought punitive damages in excess of $5 million on account of Chester-Jensen's alleged fraud.

The trial court granted Chester-Jensen's section 2—615 motion to dismiss the third amended fraud count and this appeal followed.

OPINION

A motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) attacks the sufficiency of a complaint and is to be decided solely on the allegations set forth in the complaint. (*Disc Jockey Referral Network, Ltd. v. Ameritech Publishing* (1992), 230 Ill. App. 3d 908, 596 N.E.2d 4.) The motion admits all facts well pleaded, but conclusory allegations of law or fact are not admitted. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) Exhibits attached to the complaint are part of the pleading, and the facts stated in such exhibits are considered as if alleged in the complaint. (*Outboard Marine Corp. v. Chisholm & Sons, Inc.* (1985), 133 Ill. App. 3d 238, 478 N.E.2d 651.) The complaint should be dismissed only if it appears that plaintiff can prove no set of facts under the pleadings which would entitle him to the relief sought. (*Disc Jockey Referral Network*, 230 Ill. App. 3d 908, 596 N.E.2d 4.) On review, the question is whether, when viewed in the light most favorable to the plaintiff, the facts alleged in the complaint adequately state a cause of action. (*County of Cook v. City of Chicago* (1992), 229 Ill. App. 3d 173, 593 N.E.2d 928.) Although plain-

tiff argues that his complaint adequately alleges the elements of a cause of action in fraud, we disagree only with respect to the element of reliance.

■ The elements of a cause of action for fraudulent misrepresentation are: "(1) [a] false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599.) The facts which constitute an alleged fraud must be pleaded with specificity and particularity, including "what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 457, 546 N.E.2d 580.) The dispute here centers on the first and fourth elements of the cause of action.

■ To support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; see also *Equity Capital Corp. v. Kreider Transportation Service, Inc.* (7th Cir. 1992), 967 F.2d 249.) Statements regarding future events are considered opinions, not statements of fact. (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690; *Gross Valentino Printing Co. v. Clarke* (1983), 120 Ill. App. 3d 907, 458 N.E.2d 1027.) "[T]he general rule denies recovery for fraud based on a false representation of intention or future conduct ***." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634; see also *West v. Western Casualty & Surety Co.* (7th Cir. 1988), 846 F.2d 387, 393 ("A statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable misrepresentation").) Even a false promise of future conduct with no current intent to fulfil that promise will not constitute fraud. (*Ault v. C.C. Services, Inc.* (1992), 232 Ill. App. 3d 269, 597 N.E.2d 720 (representations to plaintiff by defendant that another employee would be fired and his accounts reassigned to plaintiff held to be representations of future conduct by defendant and thus not actionable as fraud); *Gold v. Vasileff* (1987), 160 Ill. App. 3d 125, 513 N.E.2d 446 (representation by defendant attorney that his clients would comply with contract although defendant knew that they would not, not actionable as fraud since it was a representation of events to occur in the future and not one of present fact).) An exception to the general rule exists whereby a false promise as to future

circumstances may be actionable if the false statements were part of a fraudulent scheme. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; *Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690.) In determining whether a statement is one of fact or of opinion, we look to all the circumstances of the particular case. *La Scola v. U S Sprint Communications* (7th Cir. 1991), 946 F.2d 559.

In addition, statements which are nothing more than a recommendation of one's product are not representations of fact, but rather "mere commendation or opinion" and are not actionable as fraud. (*Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 902, 466 N.E.2d 1040 (representations that copier would make "picture perfect" copies and "reduce error and paper waste").) Such statements, as with statements of value made by a seller, are treated as expressions of opinion and, if so understood, may not be the basis of an action for fraud. See *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.

The alleged misrepresentations here were contained in defendant's proposal and letter submitted to EMI. Plaintiff also alleges that the same misrepresentations were repeated in the brochure provided to EMI along with the proposal. In the letter, defendant wrote that it was presenting its proposal for ice builders "as called for in the specifications." Under those specifications, the thermal banks were required to be capable of making 100,000 pounds of ice in 2½-inch thickness in 12 hours under certain conditions. The proposal itself described the ice builders as having a capacity of "100,000 pounds of ice at 2½ inch thickness," but made no reference to the time required to reach that capacity. Plaintiff contends that the statements here concerning the capability of the thermal banks to produce a particular quantity of ice are statements of existing material fact and thus actionable as fraud. In addition, plaintiff argues, defendant's representation in its submittal letter that it was proposing ice builders "as called for in the specifications" constitutes a representation of fact that the ice builders are capable of reaching capacity in 12 hours as the specifications required.

Although the alleged representations here relate to the performance of the thermal banks when installed as part of the HVAC system in the SOIC, we are nevertheless convinced that the representations here should be treated as ones of present fact rather than future performance. Under the allegations of the complaint, the representations concerned a machine of known physical characteristics and its capabilities based upon the application of certain mathematical formulae and

laws of physics to those physical properties. While there is a dearth of Illinois case law regarding representations such as those made here, we have found cases articulating this reasoning from other jurisdictions. (See *Maxwell Ice Co. v. Brackett, Shaw & Lunt Co.* (1921), 80 N.H. 236, 239, 116 A. 34, 36 ("Representations by an expert on power to one not having equal knowledge as to the amount of energy which standard makes of motors and engines will develop, are not future promises, but are statements with reference to known facts based on tests and mathematical computations. Such representations differ materially from 'sellers' talk' or mere opinion expressed to one having equal knowledge or equal opportunities for knowledge").) The representations at issue here concern the capabilities of a machine which was either in existence at the time the statements were made, or one of a known, specified, and certain type. As such, the statements at issue here must be considered representations of existing fact and thus actionable as fraud. See *Bareham & McFarland, Inc. v. Kane* (1930), 228 A.D. 396, ____, 240 N.Y.S. 123, 127 (representations that heater when installed in home would heat building to 70 degrees in zero weather, that fuel would cost no more $350 per season, and that gas for the pilot light would not exceed $1 per month held to "relate to the inherent capacity, character and quality of the heater, and what it was actually capable of doing" and thus constitute "positive statements of existing facts"); *Traylor Engineering & Manufacturing Co. v. National Container Corp.* (1949), 45 Del. 143, 70 A.2d 9 (representations that kiln would consume less than 65 gallons of oil per ton of lime produced and that kiln would easily produce 70 tons of high quality lime per day held to be actionable as fraud).

The representations at issue here were not dependent upon any future conduct of defendant, thus distinguishing them from the representations made in *Ault v. C.C. Services, Inc., Wilde v. First Federal Savings & Loan Association* (1985), 134 Ill. App. 3d 722, 480 N.E.2d 1236, and *Goldberg v. Goldberg* (1981), 103 Ill. App. 3d 584, 431 N.E.2d 1060, cited by defendant for the proposition that opinions or promises of future performances are not actionable in fraud. They also differ from the representations made in *Spiegel v. Sharp Electronics Corp.* that a copier would produce "picture perfect copies," which the court held to be "mere commendation or opinion," and those in *La Scola v. U S Sprint Communications* that the company has "lucrative compensation plan," that executives are "straight shooters" and that company is "ethical," which the court found to be too general and difficult to substantiate to be considered statements of fact. In both those cases the representations were subjective in

nature, difficult to prove, and could be reasonably considered as "dealer talk" or "puffing." (See also *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 163, 510 N.E.2d 409 (description of house as "magnificent" and "comfortable" is subjective description and not fraudulent misrepresentation).) Here, in contrast, the representations were specific and of an objective, quantifiable, and verifiable nature.

We also disagree with defendant's contention that its proposal described only the physical capacity of the thermal banks, and that it made no representations regarding the time required to reach that capacity, any such representations coming from the CDB's contract requirements, not defendant's proposal. In its submittal letter, defendant stated that it was submitting its proposal for ice builders "as called for in the specifications." Under those specifications, the thermal banks were required to be capable of making 100,000 pounds of ice in 2½-inch thickness in 12 hours under certain conditions. A reasonable inference of such a statement is that the specifications, including the requirement that the capacity be reached in 12 hours, were incorporated into the proposal.

We note that at oral argument, the parties indicated that the ice builders were custom built for the SOIC. If in fact they were designed specifically for the SOIC and were to be constructed in the future, any representations regarding their capabilities might be regarded as predictions or promises of future performance. (See *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.* (1989), 153 Wis. 2d 589, 594, 451 N.W.2d 456, 459 ("alleged representations that the clarifier to be constructed would meet the 'specific operating requirements' of [plaintiff] *** were promises of future performance"); see also *Bareham & McFarland, Inc. v. Kane* (1930), 228 A.D. 396, 240 N.Y.S. 123 (statements of characteristics of article to be constructed in the future largely conjectural).) There are, however, no allegations in the pleadings as to whether the thermal banks here were in fact custom built, and as this matter is before us upon review of the granting of a section 2—615 motion, our consideration must be confined to the allegations of the pleadings. If the fact adduced at oral argument that the thermal banks were custom built for the SOIC would have been raised in a fact motion such as one for summary judgment (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005), rather than in a pleadings motion under section 2—615, the issue would then fall within the traditional rule that an action for fraud may not be based upon opinion or representations relating to future contingent events. (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690; *West v. Western*

*Casualty & Surety Co.* (7th Cir. 1988), 846 F.2d 387) However, here we are bound to the facts alleged in the pleadings alone.

Consequently, we are unable to affirm the trial court's dismissal based on plaintiff's failure to plead the first element of his cause of action. However, we do affirm based upon plaintiff's failure to allege the required element of reliance.

■ A claim for common law fraud requires actual reliance. (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542-43, 607 N.E.2d 194 (distinguishing an action under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 260 *et seq.*), which does not require actual reliance, from one for common law fraud, which does require such actual reliance); *Morse v. Abbott Laboratories* (N.D. Ill. 1991), 756 F. Supp. 1108; see also *Cahill v. Eastern Benefit Systems, Inc.* (1992), 236 Ill. App. 3d 517, 603 N.E.2d 788 (claim for negligent misrepresentation requires showing of actual reliance); *Trautman v. Knights of Columbus* (1984), 121 Ill. App. 3d 911, 460 N.E.2d 350.) While privity is not a requisite to recovery for fraud, the misrepresentations must reach the plaintiff and he must in fact reasonably rely on them. *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 954, 316 N.E.2d 51 ("It is enough that the statement[ ] by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage"); see also *Roman v. Delta Air Lines, Inc.* (N.D. Ill. 1977), 441 F. Supp. 1160.

■ Although plaintiff alleges in conclusory fashion that it purchased and installed the ice banks in reliance on the representations made by defendant, there are no facts alleged which would indicate that plaintiff was ever shown the letter, proposal or brochure in which the alleged misrepresentations were made. (See *Greene v. First National Bank* (1987), 162 Ill. App. 3d 914, 922, 516 N.E.2d 311 (complaint for fraud properly dismissed under section 2—615 where there were no allegations that the letter containing the misrepresentations was sent to plaintiff, but only allegations that plaintiff " 'received' the *** letter from an undisclosed source at an uncertain point in time").) Plaintiff's claim of reliance appears to be based solely on its status as a third-party beneficiary of the contract between defendant and EMI. While the fact that the representations were not made directly to the plaintiff in the first instance does not preclude an action for fraud (see *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 316 N.E.2d 51), the mere fact that plaintiff may have been the third-party

beneficiary of the contract between defendant and one to whom the representations were made does not satisfy the element of actual reliance required for an action in fraud. *Cf. Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 506 N.E.2d 1052 (no action for fraud existed where there was minimal direct contact between plaintiff and defendants, and defendants personally made no representations to plaintiff).

We need not discuss the sufficiency of the allegations concerning the representations made in defendant's brochure, which apparently does not contain the exact model which defendant proposed to the CDB, since there still remain proper allegations of misrepresentations contained in defendant's proposal and submittal letter, and since the complaint fails in any event due to the insufficiency of the allegations of reliance.

Accordingly, for all the above reasons, the judgment of the circuit court of Cook County dismissing plaintiff's third amended count X is affirmed.

Affirmed.

MURRAY and McNULTY, JJ., concur.