THOMAS J. POWER, Indiv. and on Behalf of T.R. Equipment, Inc., *et al.*, Plaintiffs-Appellees, v. ROBERT L. SMITH, Defendant-Appellant (Cloyce "Turk" Smith, Defendant).

Fourth District   No. 4—01—0144

Opinion filed March 28, 2003.

McCULLOUGH, J., specially concurring.
MYERSCOUGH, P.J., dissenting.

Gregory B. Grigsby, of Grigsby, Swiney, Wilson & Grigsby, P.C., of Taylorville, for appellant.

828

Samuel J. Witsman, of Hart, Southworth & Witsman, of Springfield, for appellees.

JUSTICE COOK delivered the opinion of the court:

The trial court entered judgment in favor of plaintiffs, Thomas J. Power and R.J. Power Plumbing & Heating (Power Plumbing), and against defendant Robert L. Smith, on the basis that Smith was guilty of fraudulent misrepresentation. Smith appeals. Because we conclude that any misrepresentation was not a misrepresentation of fact, but a mere statement of opinion, we reverse.

## I. BACKGROUND

Power is the owner of Power Plumbing. Smith previously owned Smith Construction, which did water and sewer jobs in California. Smith and Power met in 1995 while Smith and Power Plumbing were doing work on a construction project in Taylorville. Smith and Power entered into a verbal agreement under which Power Plumbing bid on a number of jobs, Smith received an hourly wage for his work, and the remaining profits were divided equally between Smith and Power.

Smith and Power then formed T.R. Equipment, Inc., a subchapter S corporation, to do water and sewer jobs. Each was a 50% shareholder. Smith would do the work on the jobs and be paid an hourly wage. T.R. Equipment did not have a bonding license, and consequently, Smith and Power agreed that Power Plumbing would submit bids for water and sewer jobs to be performed by T.R. Equipment. Power Plumbing would do the administrative work on the projects. There was no written agreement between T.R. Equipment and Power Plumbing, and there was some dispute as to how profits and losses would be divided among the various entities and individuals.

Power testified that he and Smith met at Power Plumbing to review and discuss the bid on a job called the South Fork job. He and Smith reviewed and discussed the bid in detail, line item by line item. Smith was then to rewrite the bid so that it would be more legible, then take it to Power Plumbing the next day to be typed by the office manager, Debbie Aiken, and to be signed by Power's brother, Dennis Power, the vice president of Power Plumbing. Smith, however, testified that he and Power discussed the bid over the telephone and he was not aware that Power would be out of town when the bid was typed.

Power testified he returned to work on the Monday following the Friday they were awarded the South Fork job. At that time, Power learned the bid had been changed from the one he had approved. According to Power, Smith had changed several of the line items, and the bid submitted was $207,188.90 less than the bid approved by Power. Power immediately called Smith, who came to his office. According to

Power, Smith admitted that he had changed the bid, but assured Power that the job would make a profit. Smith said he had made the change because he was positive that they could lay 300 feet of pipe per day, instead of 200 feet as previously discussed.

Smith testified that he and Power discussed only the fact that the bid they had submitted was significantly lower than any of the other bids. The bid was $280,783.40 less than the next lowest bid. The bid, however, was close to the estimates prepared by the South Fork Sanitary District engineers. Smith denied changing the bid for the project and denied there was any conversation about the bid being different from that to which Smith and Power had agreed. Smith may have told Power that he was sure that they could make a profit on the South Fork job on the bid which had been submitted.

Power testified that he relied on Smith's assurances that the job would make a profit as it was bid; consequently, Power did not consider withdrawing the bid, seeking legal advice whether the bid could be withdrawn, or bringing up to the South Fork Sanitary District the fact that the bid had been changed without his knowledge.

Smith was paid $52,500 in hourly wages for working on the South Fork job. Smith's father, Cloyce Smith, was paid $38,512.06, plus $29,883 for sand, for working on the South Fork job. Smith's cousin, Danny Vidmar, was paid $48,050 for working on the South Fork job.

Power's count V, the count that went to trial, charged Smith with fraud, in that Smith stated to Power that he had the expertise to determine a price for the project which would cover all expenses for the job and allow a profit, that "in reliance on Smith's statements Power agreed to allow Smith to determine the bid price," and that after Smith determined the bid price Smith without the knowledge or consent of Power reduced the bid price by approximately $200,000. Count V alleged that Smith's statements were false statements of fact in that he knew he did not have the expertise to determine a bid price, he knew the price he determined was not sufficient, he did not intend to supervise the project to completion, he did not intend to have the necessary equipment, and "he intended to determine the bid price so that a profit could not be made on the project."

Power's theory of fraud is not entirely clear. At some points he appears to be accusing Smith of incompetence. At other points he appears to be accusing Smith of intentional harm. Count V alleges "false statements of fact" made by Smith, but changing the bid is not alleged to be one of those statements. Count V does not contain the allegation that Power, in deciding to go ahead with the project, relied upon Smith's assurances. *Cf. Prime Leasing, Inc. v. Kendig,* 332 Ill. App. 3d 300, 309, 773 N.E.2d 84, 92 (2002) (facts that constitute an alleged

fraud must be pleaded with specificity and particularity, including what misrepresentations were made).

Following a bench trial, the court found:

> "The testimony of Thomas Power and Debbie Aiken is more credible than that presented by [d]efendant. Specifically, the [c]ourt finds Robert L. Smith did change and submit the bid on the South Fork job without Thomas Power's knowledge. The [c]ourt further finds that Smith's subsequent statements to Power that the job would still be profitable are misrepresentations of fact upon which Power relied in going through with the job."

The court, concluding that Power was entitled to the benefit of his bargain, awarded him $78,489.55 damages. That award suggests that the parties lost about $60,000 on the project by submitting a bid $207,188.90 less than that to which they agreed.

## II. ANALYSIS

■ To succeed on a cause of action for fraudulent misrepresentation, plaintiffs had to prove (1) that defendant made a false statement of material fact, (2) that defendant knew was false, (3) with the intent that the statement induce plaintiffs to act, (4) plaintiffs relied on the statement, and (5) suffered damages as a result. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). These elements must be proved by clear and convincing evidence (*Los Amigos Supermarket, Inc. v. Metropolitan Bank & Trust Co.*, 306 Ill. App. 3d 115, 127, 713 N.E.2d 686, 695 (1999)), and a reviewing court will not disturb such a finding unless it is against the manifest weight of the evidence. *In re Estate of Harms*, 236 Ill. App. 3d 630, 640, 603 N.E.2d 37, 44 (1992). Further, the trier of fact is in a superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Aetna Insurance Co. v. Amelio Brothers Meat Co.*, 182 Ill. App. 3d 863, 865, 538 N.E.2d 707, 709 (1989). The ultimate question, however, whether the misrepresentation was one of fact, is a question of law.

### A. Fraudulent Concealment

On appeal, Power argues that two types of fraud are applicable to this case, fraudulent concealment and fraudulent misrepresentation. The fraudulent concealment theory is based on the fact that Smith changed the bid without Power's knowledge or consent. We accept the trial court's finding that Smith changed the bid without Power's knowledge. It is difficult to accept Power's arguments, however, that Smith knew the price he submitted was not sufficient and that Smith intended to submit a bid price such that a profit could not be made on the project. Although Smith and his relatives might make some money

even on a losing project, Smith would make more money on a profitable project. There was an incentive for Smith to submit a successful bid, but no incentive to submit a losing bid. Power's argument that Smith was not concerned with a losing bid is inconsistent with Power's argument that Smith was responsible for half of any losses.

In any event, the major problem with Power's fraudulent concealment theory is that Power, with full knowledge of the facts, chose to go ahead with the project. Although the trial court found that Smith "did change and submit the bid on the South Fork job without Thomas Power's knowledge," the trial court also found that Power chose to go ahead with the job.

■ Power argues that his choosing to go ahead did not bar recovery, that he was allowed to perform the contract after discovery of the fraud and still seek damages, citing *Vance Pearson, Inc. v. Alexander*, 86 Ill. App. 3d 1105, 408 N.E.2d 782 (1980). In *Vance Pearson*, the defendant agreed to install a set of truck scales on plaintiff's farm by a certain date but did not intend to meet that date. The court held that the plaintiff was not required to seek rescission after discovery of the fraud but was allowed to stand by the contract and seek damages. *Vance Pearson*, 86 Ill. App. 3d at 1112, 408 N.E.2d at 787. In the present case, however, Power is not seeking damages from the party with whom he contracted, the South Fork Sanitary District. Rather, Power is seeking damages from his business partner. In *Vance Pearson*, rescission would not have done the plaintiff any good. The plaintiff still would have had to find someone else to install his truck scales, and he still would have sustained damages by not having the scales at harvest time. In the present case, Power certainly would not have suffered any loss if the bid had been withdrawn. Power would not have received any profits if the bid had been withdrawn, but perhaps there were other projects available on which profits would have been made. Perhaps all the bids on the South Fork project would have been rejected if Power Plumbing's low bid had been withdrawn and Power and Smith would then have had the opportunity to rebid at a new bid-letting. It is not clear that the bid agreed to by Power and Smith, which was so far out of line with the engineers' estimates, would have been successful if it had been submitted.

## B. Fraudulent Misrepresentation

Power's theory of fraudulent misrepresentation is that once Power discovered that the bid had been changed, Smith assured and promised Power that the job would make a profit at the submitted bid price and that Smith represented to Power that he had walked the streets of Tovey, where the work would be done, and that he had personally

checked the figures against his observations. These representations are said to constitute a false statement of material fact.

■ Generally a mere expression of opinion will not support an action for fraud. *Duhl v. Nash Realty, Inc.*, 102 Ill. App. 3d 483, 489, 429 N.E.2d 1267, 1272 (1981). Sometimes, however, the expression of an opinion may carry with it an implied assertion that the speaker knows facts that justify it. Such an assertion is to be implied where the defendant holds himself out or is understood as having special knowledge of the matter that is not available to the plaintiff, so that his opinion becomes in effect an assertion summarizing his knowledge. " 'Thus the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond.' " *Duhl*, 102 Ill. App. 3d at 490, 429 N.E.2d at 1273, quoting W. Prosser, Handbook of the Law of Torts § 109, at 726 (4th ed. 1971). In *Duhl*, the court upheld a fraud count complaining about a real estate broker's opinion, following an appraisal, of the value of certain real estate. *Duhl*, 102 Ill. App. 3d at 489, 429 N.E.2d at 1272 (distinguishing, however, statements as to value made by a seller).

Power points to language in *Duhl* to support his argument that there was a misrepresentation of fact in this case:

> " 'Wherever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, so that the other party may reasonably treat it as a fact and rely upon it as such, then the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation. Statements of value are common examples, and where made in pursuance of a scheme on the part of the defendant to induce plaintiff to trade with him such statements constitute fraud and deceit.' " *Duhl*, 102 Ill. App. 3d at 489, 429 N.E.2d at 1273, quoting *Buttitta v. Lawrence*, 346 Ill. 164, 173, 178 N.E. 390, 393 (1931).

Although there is broad language in some of the cases, assurances as to future events are generally not considered misrepresentations of fact. *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 387, 618 N.E.2d 459, 463 (1993). The exceptions are limited to recognized situations such as where a realtor appraises a house. That was the situation in *Duhl*. In *Buttitta*, the defendant was employed as a realtor by the plaintiffs and represented that notes given by the purchasers were good and that he would endorse them. The notes in fact were past due, some were beyond the period of limitation, and the defendant endorsed them without recourse. Again, misrepresentations as to something to be done in the future generally do not constitute fraud. In particular, statements regarding the future profitability of an

endeavor are not statements of material fact. *Younger v. Revelle*, 78 Ill. App. 3d 1, 4, 397 N.E.2d 221, 223 (1979); *Mother Earth, Ltd. v. Strawberry Camel, Ltd.*, 72 Ill. App. 3d 37, 48-49, 390 N.E.2d 393, 403 (1979) (although representations of future income are not actionable, representations as to past income of a business constitute statements of fact).

■ Were Smith's representations here similar to representations of value made by a realtor after an appraisal? Or were they more similar to the representations one partner makes to another in deciding to take on a new client or product line, that "I think we can make money on this"? It will be a fundamental change in the law of business relationships if businesspeople become the guarantors of all projects they bring into the firm. Did Smith have special knowledge of the matter that was not available to Power? See *Duhl*, 102 Ill. App. 3d at 490, 429 N.E.2d at 1273. Power was an experienced contractor, perhaps with more experience in management and financial aspects than Smith had. The evidence showed that Power participated in calculating the bids and had very definite opinions about the bid in this case. Power and Smith did not stand in a relation similar to that of purchaser of real estate and real estate broker.

## III. CONCLUSION

The predictions here that the job would be profitable clearly are not representations as to a material fact. The predictions that "he was positive they could lay 300 feet of pipe a day" are more specific, but again they are only predictions. Power was aware of the parties' past history on rate of pipe laying. There is no indication that Smith's predictions were anything more than an estimate, no indication that they were based on any firm evidence or special knowledge on his part. Smith's predictions were simply his opinion, even though Power may have relied upon them.

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

JUSTICE McCULLOUGH, specially concurring:

I agree, the judgment of the trial court should be reversed. I write specially only to say I disagree that the trial court was correct in finding the bid was changed without Power's knowledge.

The circuit court stated in its order "the Court finds Robert L. Smith did change and submit the bid on the South Fork job without Thomas Power's knowledge." I believe the trial court is wrong in that determination. Smith and Power did have a discussion concerning the

particular bid, pursuant to procedures established by the parties in regard to other transactions. After the discussion with Power, Smith did prepare the work papers for the bid and did use figures lower than that discussed with Power. Smith then took the bid in hand-written form to Debbie Aiken, an employee of Power Plumbing, dropped it off to have it typed and signed by an officer or agent of Power Plumbing, who happened to be Dennis Power, an authorized officer of Power Plumbing. The bid was then returned to Robert Smith and later submitted to the South Fork Sanitary District.

Power testified that he told Smith that he was going to be out of town and not be in the office the next day and after the office manager, Debbie, typed the bid, his brother, Dennis Power, would sign the bid on behalf of Power Plumbing. According to Power, when he returned to work on the Monday following the Friday when the job was awarded, he first learned that the bid had been changed. Although Power argues and testifies that the bid was $207,188 less than that approved by Power, Power cannot complain. The final form of the bid was prepared in Power's office, by his office manager. His brother, the vice president, signed the contract. Nothing in the record indicates that Power either did not have enough time to indicate to the South Fork Sanitary District that the bid was wrong or in any way complain until after loss was incurred.

PRESIDING JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent and would affirm the trial court. The relationship between Power and Smith was created after Smith informed Power of his extensive experience bidding and performing sewer, water, and storm drain jobs in California and Illinois. Smith testified the size of the jobs ranged from a few thousand dollars to $300,000 and the jobs were performed for developers and public works projects. This specialized experience did provide Smith with knowledge unavailable to Power, a plumbing contractor, and this knowledge or expertise was a consideration in forming the business relationship. As such, the trial court found that when Smith assured Power that the altered bid would still allow the job to be profitable, Power accepted this assurance as a fact, not an opinion.

The record supports the trial court's finding that Smith made a false statement of material fact, and case law supports the trial court's finding that the profitability of the project was not an opinion but an assertion of fact. In *Duhl*, the court found that "[w]herever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, so that the other party may

reasonably treat it as a fact and rely upon it as such, then the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation. Statements of value are common examples, and where made in pursuance of a scheme on the part of the defendant to induce plaintiff to trade with him[,] such statements constitute fraud and deceit." *Duhl*, 102 Ill. App. 3d at 489, 429 N.E.2d at 1273. In the instant case, Smith held himself out as having special knowledge unavailable to Power and, therefore, like the real estate agent in *Duhl*, Smith's assertions were fact and not opinion.

Further, the majority states that "Power participated in calculating the bids and had very definite opinions about the bid in this case." 337 Ill. App. 3d at 833. I agree. However, Power's participation and opinions regarding this bid were of no consequence when, as the trial court found, Smith changed the bid without Power's knowledge or consent. Therefore, the trial court's ruling was not against the manifest weight of the evidence, and I would affirm.