# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3081

JEFFREY LILLIEN,

*Plaintiff-Appellant*,

v.

PEAK6 INVESTMENTS, L.P.
and PEAK6 L.L.C.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 2292—**James B. Zagel**, *Judge.*

———————

ARGUED FEBRUARY 7, 2005—DECIDED AUGUST 2, 2005

———————

Before ROVNER, WILLIAMS, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Jeffrey Lillien sued Peak6 Investments, L.P. and Peak6 L.L.C. (collectively "Peak6 ") for fraudulently inducing him to enter into an employment contract and then breaching that agreement. He initially filed suit in Illinois state court, and Peak6 removed the case to federal district court on the basis of diversity jurisdiction. Lillien claims that Peak6 fraudulently induced him to accept a position as the company's general counsel by misrepresenting that the company was on the verge of

closing an initial public offering ("IPO"). He also alleges that the company breached his employment contract by firing him without giving him the stock options or a pro-rated share of the year-end bonus that he says he was guaranteed. The district court granted summary judgment in favor of Peak6 on all of Lillien's claims, and Lillien appeals.

## I.  Background

After working as First Vice President/Senior Legal counsel for Bank One for fifteen years, Lillien began looking for a new job. He was considering several job opportunities when Peak6 offered him a position as general counsel in May 2001. Peak6 sent Lillien two offer letters promising him a base salary of $150,000 and a "year-end discretionary bonus," which was to be "distributed based on both the profitability of the company and [his] contributions to the company's success." The letters also specified that "[i]n the case of an IPO, [Lillien would] receive options." Lillien claims that around the time he received the letters, he also had conversations with Peak6 principals Matthew Hulsizer and Jennifer Just in which they assured him that the process leading up to the IPO was substantially complete and that he was guaranteed $500,000 in stock options and a year-end bonus of at least $150,000. After receiving one of the letters, Lillien called Peak6 to ask if a specific bonus amount could be put in writing. He was informed by Karen Day, Peak6's Human Resources Manager, that Peak6 never puts target bonus numbers in writing. Lillien accepted Peak6's offer and began working at the end of May. He learned immediately that Peak6's chief financial officer ("CFO") had left the company at the end of April and had yet to be replaced and that the company had suffered financial losses in mid-May. The IPO was postponed several times and ultimately cancelled in November. In January

2002, Peak6 fired Lillien and afforded him a pro-rated year-end bonus of $30,000.

Lillien then filed suit, claiming that Hulsizer and Just fraudulently induced him to accept employment with Peak6 by misrepresenting the likelihood of the IPO. He asserted that, instead of telling him in early May that the IPO process was progressing, they should have disclosed to him that the company's CFO had just quit. In Lillien's opinion, the CFO's departure clearly doomed the issuance of the IPO. Lillien also argued that Peak6 breached his employment contract by failing to offer him stock options and by paying him only a $30,000 bonus. He claimed that he should have received a pro-rated share of the $150,000 bonus that he was guaranteed, an amount he calculates to be $90,000.

The district court granted summary judgment to Peak6 on all of Lillien's claims. On his claim that Peak6 promised him a specific year-end bonus amount, the court concluded that Lillien could not prove that Peak6 made a clear and definite promise regarding the bonus amount, which is required under Illinois law to form an employment contract. The court noted that the written offer letters described the bonus as discretionary and did not promise any specific amount. The court also concluded that in light of the clear written language, Lillien could not reasonably have interpreted any statements by Hulsizer and Just to guarantee him a definite bonus amount. On the issue of the stock options, the court determined that the issuance of the IPO was a condition precedent to Lillien receiving any stock options, and that condition had not occurred. The court found no evidence that Peak6 promised to close the IPO as part of Lillien's offer of employment. Regarding Lillien's fraudulent inducement claim, the court found that Lillien could not prove that Hulsizer or Just said anything to him about the IPO that qualified as a false statement under

Illinois law. He could prove only that they miscalculated the likelihood of the IPO occurring as planned.

## II. Analysis

On appeal Lillien abandons his claim that Peak6 was contractually obligated to offer him stock options. He challenges the district court's resolution of his claim for his year-end bonus, arguing that he created a triable issue of fact over whether Peak6 promised him a guaranteed year-end bonus of $150,000. He concedes that a part of his year-end bonus was discretionary and based on his performance, but he argues that he was guaranteed at least $150,000 so long as the company was sufficiently profitable. He relies on the language of the offer letter Peak6 sent him about the bonus and his affidavits describing the conversations he had with Hulsizer and Just about the bonus.

As the district court correctly observed, the language of the offer letter describing the bonus does not support Lillien's assertion that he was guaranteed any specific amount of a year-end bonus. The letter describing the bonus states: "You will be eligible for a year-end discretionary bonus. This incentive award is distributed based both on the profitability of the company and your contributions to the company's success." The letter does not say anything about a guaranteed $150,000, and, rather than describing any part of the bonus as guaranteed, it describes the entire bonus as "discretionary." Lillien attempts to downplay the language describing the bonus as discretionary by relying on *Tidwell v. Toyota Auto Mart, Inc.*, 375 N.E.2d 540, 543 (Ill. App. 2 Dist. 1978), in which an Illinois court concluded that, despite language in a written document describing a bonus as discretionary, the employer did not retain the right to completely deny the plaintiffs a bonus at the end of the year. In *Tidwell* the employees were working under an oral contract, but there was a document describing their

year-end bonus as "an added incentive that the Company elects to give [the employee] at their descretion [sic] for extra effort, a fine and loyal attitude and high efficiency in the performance of the duties of [the] position." *Id.* at 541. The employer interpreted the language to mean that it could elect at the end of a year not to pay an employee any bonus at all. The court however concluded that the employer initially had discretion to offer a new employee a bonus package or not, but after it offered the bonus incentive to an employee, it was bound to pay the bonus at the end of the year if the employee met all of the requirements. *Id.* at 543.

Lillien's case is distinguishable from *Tidwell*. In *Tidwell*, the issue was whether the employer had the discretion to initially offer an employee a bonus and then later deny it completely, and the contract provision describing the bonus was open to different interpretations on that issue. In this case, however, Peak6 is not claiming that it could completely deny Lillien a bonus. Rather, Lillien is claiming that the offer letter can be interpreted to *guarantee* him the specific amount of $150,000; the language of the offer letter, however, is simply not open to that interpretation. Lillien's only evidence that any portion of the bonus was guaranteed comes not from the offer letters but rather from his own affidavits describing conversations he had with Hulsizer and Just. But Illinois's parol evidence rule prevents him from introducing evidence about prior oral agreements that contradict the clear terms of a written agreement. *See W. W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill. App. 1 Dist. 2004). The district court did not err in granting summary judgment to Peak6 on Lillien's claim that he was guaranteed a $150,000 bonus.

Lillien also argues on appeal that the district court erred in finding no evidence that Hulsizer or Just made false statements to induce him to accept Peak6's offer of employment. The district court concluded that if Hulsizer and Just

did promise Lillien that the IPO would close as planned, they always intended to keep those promises. *See Bower v. Jones*, 978 F.2d 1004, 1011-12 (7th Cir. 1992) (discussing promissory fraud under Illinois law). The court observed that the undisputed evidence pointed to the conclusion that Hulsizer and Just genuinely intended for the IPO to close as planned and took substantial steps to reach that goal.

Lillien contends on appeal that the district court misunderstood his claim. He explains that he was not trying to prove that Hulsizer and Just misrepresented their intentions about the IPO or made false promises to him but rather that they misrepresented the likelihood of the IPO occurring. Specifically, he explains that they led him to believe that the IPO would close at the end of May but neglected to reveal qualifying material facts—that the CFO had resigned at the end of April and that the company was experiencing financial trouble. He contends that Hulsizer and Just's omission of the qualifying facts rendered their prediction about the IPO a "half-truth." *See W. W. Vincent & Co.*, 814 N.E.2d at 969.

Lillien may be correct that a half-truth can constitute a false statement, *see id.*; *see also Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 811 (Ill. App. 2 Dist. 1993), but the alleged half-truth that Lillien identifies— the likelihood of the IPO occurring—is not actionable as a false statement under Illinois law because it is a prediction about a future event. Fraudulent misrepresentation claims require proof of a false statement about a material fact, *see Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 591 (Ill. 1997), and the false statement generally must relate to past or current facts, not promises or predictions about the future, *see Power v. Smith*, 786 N.E.2d 1113, 1118-19 (Ill. App. 4 Dist. 2003) ("misrepresentations as to something to be done in the future generally do not constitute fraud"); *Phil Dressler & Assoc., Inc. v. Old Oak Brook Inv. Corp.*, 548 N.E.2d

1343, 1347 (Ill. App. 2 Dist. 1989); *Wilde v. First Fed. Sav. and Loan Ass'n of Wilmette*, 480 N.E.2d 1236, 1242-43 (Ill. App. 1 Dist. 1985).

There are exceptions to this general rule, but none of them help Lillien. A statement about matters in the future may be actionable if it is presented as a fact about which the speaker has special knowledge. *See Power*, 786 N.E.2d at 1118-19; *Phil Dressler*, 548 N.E.2d at 1347. But given all of the contingencies involved in the issuance of an IPO, Lillien could not reasonably have relied on Hulsizer and Just's assertion that the IPO was inevitable. There is also an exception for promissory fraud, which is when a party makes a promise about future conduct but never intends to keep that promise. If that promise is part of an overall scheme to defraud, it may be actionable as a misrepresentation. *See Bower*, 978 F.2d at 1011. Lillien has made clear on appeal, however, that he is not claiming that Hulsizer and Just made any promises they never intended to keep, and Lillien presented no evidence of false promises in any case. Lillien has not created a triable issue of fact over whether Hulsizer and Just made false statements to him to induce him to accept employment with Peak6.

Lillien includes some language and citations in his appellate brief suggesting that, instead of pursuing a claim for fraudulent misrepresentation, he was intending to prove that Peak6 fraudulently *concealed* material facts from him. Fraudulent concealment occurs when a person with a duty to speak conceals facts from another. *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 765-66 (Ill. App. 1 Dist. 2003). A plaintiff must prove that one party to a negotiation has a duty, arising out of a confidential or fiduciary relationship, to reveal hidden facts to the other party. *See Thornwood*, 799 N.E.2d at 765-66. Although Lillien has suggested that Hulsizer and Just had a duty to tell him about the CFO's departure and the company's financial troubles, he does not identify a confidential or fiduciary

relationship that would give rise to such a duty. He has not, therefore, fully developed an argument for a fraudulent concealment claim.

### III. Conclusion

Lillien has not demonstrated that he created a triable issue of fact on his claim that Peak6 had a contractual duty to pay him a pro-rated share of a $150,000 year-end bonus or his claim that Peak6 fraudulently induced him to accept a position as the company's general counsel. We therefore AFFIRM the judgment of the district court granting summary judgment to Peak6.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
