MARK G. WEINBERG *et al.*, Plaintiffs-Appellants, v. CHICAGO BLACK-HAWK HOCKEY TEAM, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—93—1176

Opinion filed August 2, 1995.

Marshall Patner, David I. Hurwitz, and Jeremy W. Hobbs, all of Marshall Patner & Associates, P.C., of Chicago, for appellants.

Eugene E. Gozdecki and Patrick K. Nails, both of Gozdecki & Del Guidice, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Mark G. Weinberg and Blue Line Publishing, Inc.,[1] brought an action against defendant, Chicago Blackhawk Hockey Team, Inc. (Blackhawks), for violations of the Illinois Antitrust Act (the Act). (See 740 ILCS 10/3 (West 1992).) Plaintiffs alleged that the Blackhawks violated the Act by (1) refusing to grant plaintiffs media credentials and press access to the Chicago Stadium for the Blackhawks' practices, press conferences and post-game interviews; (2) interfering with an advertising contract between plaintiffs and one of their advertisers; and (3) instigating the arrest of plaintiff Weinberg while he was selling The Blue Line on the streets surrounding the Chicago Stadium. Pursuant to the Blackhawks' motion to dismiss for failing to state a claim, the trial court dismissed the allegations relating to the first and third claims with prejudice, and dismissed the allegations relating to the second claim without prejudice.

On appeal, plaintiffs argue only the dismissal of the allegations relating to the first claim. Accordingly, the sole issue before us is whether the trial court properly dismissed the allegations in plaintiffs' complaint relating to defendant's refusal to grant the plaintiffs media credentials and press access to Chicago Blackhawks' practices, press conferences and post-game interviews. We reverse and remand.

When reviewing a motion to dismiss for failing to state a claim, we accept all properly pleaded facts as true, as well as all reasonable inferences that may be drawn from those facts. (*Dworak v. Village of Wilmette* (1993), 249 Ill. App. 3d 275, 277, 618 N.E.2d 974, 976.) A complaint should be dismissed upon such a motion only where it is clear that the complaint contains no allegations of fact which if proven would allow plaintiff to recover. (*People ex rel. Peters v. Murphy-Knight* (1993), 248 Ill. App. 3d 382, 386, 618 N.E.2d 459, 463.) Moreover, a trial court's ruling on a motion to dismiss for a failure to state a cause of action will be reversed only where an abuse of its discretion has occurred. *Knox College v. Celotex Corp.* (1982), 88 Ill. 2d 407, 422, 430 N.E.2d 976, 983.

A fair reading of plaintiffs' complaint reveals the following. The

---

[1]Mark G. Weinberg is the sole shareholder of Blue Line Publishing, Inc.

plaintiffs and the Blackhawks publish competing program guides. Plaintiffs publish and sell The Blue Line in the streets surrounding the Chicago Stadium. Each issue of The Blue Line is written for that day's specific game and contains statistical information regarding the Blackhawks and other National Hockey League teams current through the date of publication. The Blackhawks, on the other hand, control and profit from the sale of their game-day program, Face Off. The Blue Line and Face Off are the only game-day programs published for the Blackhawks' games.

The Blackhawks have exclusive control over the following: (1) the grant or denial of media credentials for Blackhawks' games and practices at the Chicago Stadium; (2) access to the Blackhawks' players and coaching staff during the games and practices; (3) access to the press box and press room at the Chicago Stadium; and (4) access to regularly scheduled press conferences at the Chicago Stadium.

On February 18, 1991, plaintiffs requested media credentials for the remaining home games for the Blackhawks' 1990-91 season. The Blackhawks denied plaintiffs' request, stating that the credentials were granted on a first-come-first-served basis and that no credentials remained for the 1990-91 season. On June 6, 1991, one week after the end of the 1990-91 season, plaintiffs made a written request to the Blackhawks for media credentials for the upcoming 1991-92 season. On June 14, 1991, plaintiffs made a second written request. The Blackhawks denied plaintiffs' requests on September 8, 1991. On November 15, 1991, plaintiffs again made a written request for media credentials. The Blackhawks did not respond to this request.

The assistant director of public relations of the Blackhawks was quoted as saying that The Blue Line was denied media credentials because, "I don't think we want to set aside credentials for a publication that is conceivably competing against *Goal.*" Goal was the predecessor program of Face Off. Plaintiffs' requests for media packets that the Blackhawks distribute from time to time and that contain statistical information and player photographs have also been repeatedly denied.

Plaintiffs contend that the above allegations of fact establish a violation of the Act. Specifically, the above allegations implicate section 3(3) of the Act, which states that a person will be deemed to have committed a violation of the Act who shall:

"Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or

maintaining process in such trade or commerce." 740 ILCS 10/3(3) (West 1992).[2]

Plaintiffs refer to two separate theories under which to prove a violation of section 3(3) of the Act. The first theory is known as monopoly leveraging. Monopoly leveraging occurs where a party has monopoly power in one market and uses this power to extract a competitive advantage in a second market. (*Illinois ex rel. Hartigan v. Panhandle Eastern Pipeline Co.* (C.D. Ill. 1990), 730 F. Supp. 826, 923-24, *aff'd by Illinois ex rel. Burris v. Panhandle Eastern Pipeline Co.* (7th Cir. 1991), 935 F.2d 1469.) In the present case, plaintiffs allege that the Blackhawks are using their monopoly power in professional hockey in Chicago to gain a competitive edge in the sales of game-day programs by illegally refusing to deal with plaintiffs.

■ In order to state a claim for monopoly leveraging under section 3(3) of the Act, a plaintiff must allege (1) that defendant has monopoly power in one market, (2) that defendant used this power to exact a competitive advantage for itself in a second market, (3) that the competitive advantage was not won on competitive merits but, rather, stemmed from a coercive use of the monopoly power in the first market, (4) that the defendant acted with the intent to gain the unwarranted advantage in the second market, and (5) the anti-competitive conduct resulted in a lessening of competition. *Panhandle Eastern*, 730 F. Supp. at 925.

In the present case, we believe plaintiffs' complaint adequately contains allegations of fact supporting a finding of all the necessary elements. As to the first element, the Blackhawks unquestionably have monopoly power in National Hockey League hockey in Chicago. We note that a professional sports team, like the Blackhawks, is an absolutely unique entity providing the public with an absolutely unique product. The second element, concerning the use of monopoly power to gain an advantage in a second market, is established by the allegations relating to the Blackhawks' refusal to grant plaintiffs media credentials and press access to prevent The Blue Line from competing with Face Off. The same allegations satisfy the third element. The advantage Face Off has acquired was achieved not through pro-competitive efficiencies but, rather, through denying plaintiffs access to the Blackhawks' games. The fourth element, intent, is sup-

[2]The Illinois Antitrust Act, by its own terms, is to be construed with applicable Federal precedent. (740 ILCS 10/11 (West 1992).) Specifically, it has been noted that section 3(3) of the Act has been modeled after section 2 of the Sherman Anti-Trust Act, and therefore should be construed with Federal cases interpreting section 2 of the Sherman Anti-Trust Act. *Illinois ex rel. Burris v. Panhandle Eastern Pipeline Co.* (7th Cir. 1991), 935 F.2d 1469, 1480.

plied by the quote from the assistant director of public relations wherein he stated: "I don't think we want to set aside credentials for a publication that is conceivably competing against *Goal*."

The only remaining element under the monopoly leveraging theory is whether plaintiffs have sufficiently alleged that the Blackhawks' course of conduct has had an anti-competitive effect. It is this element that the trial court found lacking in plaintiffs' complaint and upon which it dismissed the allegations.

Initially, we note that nowhere in the complaint is it stated that the Blackhawks' course of conduct has had an anti-competitive effect. But such an allegation, being wholly conclusory, is not needed to state a proper claim under the Act. What is required is that the plaintiffs plead sufficient facts which either establish that competition has been harmed or give rise to the reasonable inference that this is the case.

We believe a fair reading of plaintiffs' complaint gives rise to the reasonable inference that competition has been harmed. The complaint clearly states that the Blackhawks have effectively excluded The Blue Line from the immediate and intimate access to the games and players that the Blackhawks' own publication enjoys and to which one would reasonably expect any game-day program to have. From the very existence of media credentials, press boxes, press rooms and press conferences, we can reasonably infer that a publication without access to these credentials, locations and events is less competitive than it would otherwise be. Through the course of conduct alleged in the complaint, plaintiffs are unable to obtain the quality of photographs, reports and interviews, including answers to plaintiffs' own questions, which they otherwise would have. Denying such access necessarily makes The Blue Line less competitive.

It is no answer to argue as the Blackhawks have that The Blue Line easily outsells their own publication. First and foremost, such information is not contained in plaintiffs' complaint, and it is to the four corners of plaintiffs' complaint that we look in reviewing a motion to dismiss for failing to state a cause of action. Moreover, an inquiry into whether competition has been harmed is not a mere exercise in bean counting. One of the primary goals of antitrust legislation is to enhance consumer welfare. Accordingly, if The Blue Line cannot put forth its best program due to the monopolistic practices being engaged in by the Blackhawks, then its readers, however many, are suffering an anti-competitive effect. Consumer welfare is measured as much, if not more, by the quality of a product as it is by the quantity being sold.

The case on which the Blackhawks rely is inapposite. The Black-

hawks cite *Twin Laboratories, Inc. v. Weider Health & Fitness* (2nd Cir. 1990), 900 F.2d 566, for the proposition that if sales of a product remain strong after the alleged monopolistic conduct then there is no anti-competitive effect. In that case the plaintiff was prevented from advertising its nutritional supplements in a magazine whose owner also marketed a nutritional supplement. Despite the advertising ban, the plaintiff continued to post growing sales. The difference in that case and in the case at bar is that the advertising ban there did not lessen the quality of the product. In the present case, the quality of The Blue Line has been adversely affected. For the foregoing reasons we believe plaintiffs have adequately stated a cause of action under the Act based on monopoly leveraging.

■ The plaintiffs here prevail for another reason. Plaintiffs' complaint also states a cause of action based on the essential facilities doctrine. The impetus behind this doctrine is the fear that a monopolist will be able to extend monopoly power from one market to another. (*MCI Communications Corp. v. American Telephone & Telegraph Co.* (7th Cir. 1981), 708 F.2d 1081, 1132.) Antitrust laws, therefore, require that a party controlling an essential facility provide access to that facility on nondiscriminatory terms. *MCI Communications*, 708 F.2d at 1132.

To state a cause of action under section 3(3) of the Act based on the essential facilities doctrine, a plaintiff must allege (1) control of the essential facility by a monopolist, (2) a competitor's inability to practically or reasonably duplicate the essential facility, (3) the denial of the use of the facility to a competitor, (4) the feasibility of providing the facility and (5) that denial has had an anti-competitive effect. *Illinois ex rel. Hartigan v. Panhandle Eastern Pipeline Co.* (C.D. Ill. 1990), 730 F. Supp. 826, 925, *aff'd* (1991), 935 F.2d 1469; See also *MCI Communications*, 708 F.2d at 1132-33.

■ In the present case, plaintiffs have sufficiently alleged facts to support all five elements. First, plaintiffs have alleged that the Blackhawks have exclusive control over the granting of media credentials, access to the players and coaching staff and attendance at games, practices, press conferences and post-game interviews. Second, the above allegation gives rise to the reasonable inference that plaintiffs cannot reasonably duplicate the access to the games, players and so forth. Third, plaintiffs have clearly alleged that they have been denied the use of the facility they are seeking. Fourth, the feasibility of providing the facility is demonstrated by the allegations that such access is regularly granted to others. Finally, as stated above, we believe that the complaint gives rise to the reasonable inference that the denial of access complained of has had the anti-competitive effect of lessening the quality of plaintiffs' publication.

The Blackhawks make much out of the fact that the plaintiffs are not seeking the use of a physical facility, but access, which they argue is intangible. We fail to see any real significance in this distinction. Moreover, what plaintiffs really sought was use of the Chicago Stadium, which while sadly is no longer standing, certainly was at the time a physical facility.

For the above reasons, we conclude that the trial court erred when it dismissed plaintiffs' complaint for failing to state a cause of action under the Illinois Antitrust Act. Accordingly, the order of dismissal is reversed and the case remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN, P.J., and CERDA, J., concur.