NOTICE

Opinion filed March 14, 2011.
Modified upon denial of rehearing
May 9, 2011.

NO. 5-08-0578

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| COY CHIROPRACTIC HEALTH CENTER, INC., RICHARD COY, D.C., and FRANK C. BEMIS & ASSOCIATES, d/b/a BEMIS CHIROPRACTIC, Individually and on Behalf of Others Similarly Situated, | ) ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) ) | |
| v. | ) ) | No. 05-L-151 |
| TRAVELERS CASUALTY AND SURETY COMPANY and THE TRAVELERS INDEMNITY COMPANY, | ) ) ) ) | Honorable Daniel J. Stack, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE SPOMER delivered the judgment of the court, with opinion.
Justices Stewart and Wexstten concurred in the judgment and opinion.

**O P I N I O N**

The defendants, Travelers Casualty and Surety Company and The Travelers Indemnity Company (Travelers), appeal the October 14, 2008, order of the circuit court of Madison County that granted the motion for a class certification filed by the plaintiffs, Coy Chiropractic Health Center, Inc., Richard Coy, D.C., and Frank C. Bemis & Associates, doing business as Bemis Chiropractic, individually and on behalf of others similarly situated. In its order, the circuit court certified the following class:

"All licensed healthcare providers in Illinois whose reimbursement for medical services covered by a workers' compensation policy was reduced by Travelers pursuant to a PPO discount since February 11, 2005."

Upon the denial of a rehearing, we issue this modified opinion, and for the following

1

reasons, we reverse and remand for further proceedings not inconsistent with this opinion.

FACTS

According to the plaintiffs' first amended complaint, the plaintiffs entered into contracts with First Health and its predecessor, Community Care Network (CCN), under which the plaintiffs agreed to participate in a preferred provider network. Pursuant to these preferred provider agreements, the plaintiffs agreed to accept discounted reimbursements from payor insurance companies, health care plans, or claims administrators with whom First Health and CCN had contracted. According to the plaintiffs, Travelers discounted bills from the plaintiffs without steering patients to the plaintiffs by offering financial incentives to their insureds for utilizing the plaintiffs as their provider. The plaintiffs' theory is that because, in the context of workers' compensation, insurance companies cannot provide financial incentives to patients to steer them toward a network provider and the use of financial incentives is the only true method of steering patients, Travelers is not entitled to take preferred provider organization (PPO) discounts on bills for workers' compensation patients submitted by network providers such as the plaintiffs.

In count I, the plaintiffs alleged that this practice of discounting bills without providing financial incentives amounted to a violation of Illinois's Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq*. (West 2004)) because Travelers misrepresented to the plaintiffs that they were entitled to a PPO discount. In count II, the plaintiffs alleged unjust enrichment by Travelers as a result of this practice. In count III, the plaintiffs alleged an alternative cause of action for a breach of contract. Finally, in count IV, the plaintiffs alleged a civil conspiracy based on Travelers' practice of entering into PPO networks with no intention to provide financial incentives to its insureds for utilizing the network. The circuit court dismissed count IV prior to ruling on the motion for a class certification. The order dismissing count IV is not a subject of this

2

appeal.

Exhibit A to the first amended complaint is a preferred provider agreement entered into between First Health and Richard Coy, one of the named plaintiffs in this action, dated August 1, 2007. In section 1.5 of the preferred provider agreement, Dr. Coy agrees to the following:

"Provider understands that by execution of this Agreement, Provider agrees to participate in a Preferred Provider Panel (PPO Plan) being created by First Health. Provider further understands that First Health will offer to certain Payors the opportunity to contract with First Health to utilize the services of the health care providers participating in the Preferred Provider Panel. Payors may elect to use some or all of the providers participating in First Health's PPO plan. First Health will supply Provider with a list of all Payors that have entered into Agreements with First Health to utilize Provider's services."

Section 3.1 of the preferred provider agreement reads as follows:

"Subject to Provider's available facilities and service capability, Provider shall provide Covered Medical Services to Participating Patients promptly and in the same manner as services are provided to all patients. In providing services to Participating Patients *under the Workers' Compensation Program*, Provider agrees to cooperate with the Payor to expedite the Participating Patient's return to work, consistent with Provider's professional judgment." (Emphasis added.)

In section 3.6 of the preferred provider agreement, Dr. Coy agrees to "use his best efforts, in accordance with accepted professional standards for rendering quality care, to make referrals of Participating Patients only to other health care practitioners and facilities that participate in a First Health PPO Plan." In section 4.3 of the preferred provider agreement, Dr. Coy "agrees to accept the reimbursement amounts specified in Appendix A

3

as payment in full for Covered Medical Services rendered to Participating Patients." Appendix A shows reimbursement discount rates for all types of medical services, *including a provision for reimbursement from workers' compensation payors for services rendered to occupationally ill or injured employees*. No provision in the preferred provider agreement promises Dr. Coy any steerage or financial incentives.

Although the preferred provider agreement between Dr. Frank Bemis and First Health's predecessor, CCN, is not appended to the first amended complaint in the record on appeal, it does appear elsewhere in the record. The form of this agreement differs from that of the Coy/First Health Network agreement. However, there is a similar provision whereby Dr. Bemis promises to provide services to patients and to accept discounted reimbursements from those health plans and insurance companies that CCN contracts with as payors. Dr. Bemis also promises to refer patients within the network whenever possible. It is also clear from the Bemis/CCN agreement *that workers' compensation services are within its scope*. Again, no provision in that agreement promises Dr. Bemis any steerage or financial incentives.

In affidavits attached to the complaint, both Dr. Bemis and Dr. Coy averred that they had no knowledge of whether Travelers had a payor agreement with First Health or CCN. However, a "Managed Care Services Agreement" (payor agreement) dated March 28, 1996, between Travelers and HealthCare Compare, another predecessor corporation to First Health, appears in the record under seal. The initial term of the payor agreement was for five years and nine months beginning on March 28, 1996, and ending on December 31, 2001, to be automatically renewed for consecutive three-year terms unless terminated by either party. In this payor agreement, Travelers was promised, for a substantial fee, access to the network and medical cost management services for its workers' compensation claims. Nowhere in this contract does Travelers promise to provide financial incentives to any patient to utilize

4

a network provider. The only promises Travelers makes in the payor agreement are to distribute materials to customers, educate employers on how to access the network, and direct claimants to contract providers to the extent permitted under applicable law. The payor agreement also specifies that there are no intended third-party beneficiaries.

Documents entitled "Explanation of Reimbursement" (EOR) that Travelers sent to the plaintiffs explaining the PPO discount were also appended to the complaint. Each EOR states that the bills submitted to Travelers were being "reimbursed in accordance with the First Health Network contract (formerly Affordable)." Hundreds of pages of deposition testimony and exhibits from various employees of Travelers and First Health, as well as the named plaintiffs, are also contained in the record and may be referred to if necessary throughout this opinion.

On October 14, 2008, after considering all the pleadings and oral argument by counsel, the circuit court entered an order granting the motion for a class certification. After this court denied Travelers' petition for leave to appeal, the Illinois Supreme Court issued a supervisory order on May 28, 2009, directing this court to consider the matter on its merits. *Coy Chiropractic Health Center, Inc. v. Travelers Casualty & Surety Co.*, 232 Ill. 2d 578 (2009). After briefing and oral argument, we filed an opinion on March 14, 2011, reversing the order granting class certification and remanding for further proceedings not inconsistent with our opinion. On March 25, 2011, the plaintiffs filed a petition for a rehearing. Upon the denial of a rehearing, we now issue this modified opinion.

## ANALYSIS

Section 2-801 of the Illinois Code of Civil Procedure sets forth the prerequisites needed in order to maintain a class action. 735 ILCS 5/2-801 (West 2006). These were recently summarized by the Illinois Supreme Court as follows:

"(1) the class is so numerous that joinder of all members is impracticable; (2) there

5

are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 71-72 (2007).

"The decision regarding class certification is within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion or applied impermissible legal criteria." *Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 761 (2008) (citing *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006)). "The proponent of the class action bears the burden to establish all four of the prerequisites set forth in section 2-801." *Cruz*, 383 Ill. App. 3d at 761 (citing *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005)). However, as indicated by the Illinois Supreme Court in *Barbara's Sales, Inc.*, there is no need to determine whether the prerequisites of the class action are satisfied if, as a threshold matter, the record establishes that the plaintiffs have not stated an actionable claim. 227 Ill. 2d at 72.

Although the first amended complaint first alleges a violation of the Consumer Fraud Act in count I based on a purported misrepresentation by Travelers that it was entitled to take a PPO discount, in oral argument, the plaintiffs stated that this is really an alternative theory to their breach-of-contract claim in count III. According to the plaintiffs' representations at oral argument, their alternative theories in count I and count III can be stated as follows: Travelers breached its contract with the plaintiffs by taking the PPO discounts from the plaintiffs' bills while knowing that it did not provide a financial incentive to the workers' compensation claimants to utilize the plaintiffs' services; alternatively, in the absence of a contract, Travelers misrepresented its status as a network provider to the plaintiffs when it took the PPO discounts, thus violating the Consumer Fraud Act. Based on the plaintiffs'

6

representations regarding their theory of their case, we begin by examining the breach-of-contract claim.

Concerning the plaintiffs' claim for a breach of contract, the record is clear that the plaintiffs and Travelers never entered into a contract directly. Instead, the plaintiffs entered into preferred provider agreements with First Health and its predecessor, CCN, promising to accept payments at discounted rates from any payor with whom First Health contracted. Neither Bemis's preferred provider agreement with CCN nor Coy's preferred provider agreement with First Health contained provisions promising any particular steerage or financial incentive to the plaintiffs. Even if it could be said that the plaintiffs are third-party beneficiaries to the payor agreement, the payor agreement does not contain any language mandating that Travelers provide financial incentives to a patient in order to take a PPO discount. Rather, in the payor agreement, Travelers pays First Health a substantial fee to access the network. The only promises that Travelers makes in the payor agreement are to educate employers, maintain provider directories, and steer claimants to network providers "as permitted by applicable law." Assuming that the term "steer" can be defined to require the use of financial incentives, the plaintiffs' theory is that because Illinois workers' compensation law makes it impossible to provide financial incentives to injured workers to utilize a certain provider, taking the discounts is unlawful. This theory is belied by the provision in the payor agreement that Travelers must only direct patients to network providers "as permitted by applicable law."

In their petition for a rehearing, the plaintiffs contend that this court has misapprehended their theory and that Travelers was, in fact, permitted by applicable law in Illinois to provide financial incentives to patients to choose a particular provider from the network in the workers' compensation context. The plaintiffs refer this court to section 8(a) of the Workers' Compensation Act (820 ILCS 305/8(a) (West 2008)), which provides that

7

the employee may at any time elect to secure his own physician, surgeon, or hospital services at the employer's expense but provides for the following alternative arrangement for the selection of a second physician if the employee is not satisfied with the physician first selected:

> "Upon agreement between the employer and the employees, or the employees' exclusive representative, and subject to the approval of the Illinois Workers' Compensation Commission, the employer shall maintain a list of physicians, to be known as a Panel of Physicians, who are accessible to his employees. The employer shall post this list in a place or places easily accessible to his employees. The employee shall have the right to make an alternative choice of physician from such Panel if he is not satisfied with the physician first selected."

The plaintiffs also refer this court to the provision in section 8(a) of the Workers' Compensation Act (820 ILCS 305/8(a) (West 2008)) that limits the employee to two choices of providers and then provides, "Thereafter the employer shall select and pay for all necessary medical, surgical and hospital treatment and the employee may not select a provider of medical services at the employer's expense ***."

The plaintiffs argue that in the foregoing situations, where the employees and employer have agreed to have the employer choose a panel for second-choice providers or where the employee has exhausted his or her two choices of provider, Travelers would have the ability to provide financial incentives to the employee because if the employee chooses a different provider, the employee will have to pay the full cost of treatment. However, the existence of these limited situations where steerage may be feasible does not render the plaintiffs' cause of action for a breach of contract against Travelers a viable one. The plaintiffs do not allege that these situations applied in either of their cases and that Travelers failed to provide steerage despite the existence of these situations. In addition, the class is

8

not defined to include only those providers who treated patients in those situations. To the extent that the plaintiffs argue that they expected that discounts would only be taken in these situations and not in employee-choice situations, this expectation is belied by the contract language. Again, the provider agreements state that the plaintiffs will provide treatment to workers' compensation beneficiaries at a discounted rate. The provider agreements do not delineate that the providers only need to accept a discount rate in those situations where there has been some type of steerage. The payor agreements only required Travelers to provide steerage "as permitted by applicable law." The contracts at issue simply do not support a breach-of-contract claim based on the plaintiffs' theory.

Finally, the plaintiffs argue in their petition for a rehearing that because the payor agreements at issue in this case only required Travelers to steer "to the extent permitted by applicable law," the agreements are contrary to how a PPO is meant to operate and what Illinois administrative regulations require of PPO arrangements. Specifically, the plaintiffs point to section 2051.55(c)(1)(A) of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code §2051.55(c)(1)(A), amended at 22 Ill. Reg. 5126, eff. Dec. 9, 1997, and repealed at 34 Ill. Reg. 161, eff. Dec. 16, 2009), which provided that the payor agreement "shall contain terms requiring that incentives be provided to the insured or beneficiary to utilize the services of a provider that has entered into an agreement with the administrator." The new requirements for payor agreements, found at section 2051.280(a) of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code §2051.280(a), adopted at 34 Ill. Reg. 163, 177, eff. Dec. 16, 2009) provide that they must contain "[t]erms requiring and specifying all incentives to be provided to the beneficiary to utilize services of a provider that has entered into an agreement with the administrator."

The plaintiffs argue that the aforementioned regulations should be read into the payor agreements at issue as an implied term. There are two problems with this argument. First,

9

in order to give the effect to the regulations that the plaintiffs endorse, that financial incentives are required in every situation, this court would have to nullify the language of the contract that steerage is only required "as permitted by applicable law." The plaintiff has provided no authority, and this court is aware of none, that would permit such a rewriting of the contracts. Second, assuming that the payor agreements at issue somehow violated these administrative regulations due to the limiting language requiring Travelers to steer only "to the extent permitted by applicable law," the remedy for that violation is not a cause of action for a breach of contract against Travelers. The regulations set forth by the Illinois Department of Insurance govern the PPO administrators, who drafted the provider and payor agreements. In addition, the administrators are required to place samples of all payor agreements and provider agreements with the Illinois Department of Insurance as a part of their registration process. See 50 Ill. Adm. Code §2051.260, adopted at 34 Ill. Reg. 163, 175, eff. Dec. 16, 2009. It is the province of the Department of Insurance, and not this court, to determine whether the payor agreements met the requirements of the regulations. For all of these reasons, the plaintiffs do not have an actionable claim against Travelers for a breach of contract.

We next examine the plaintiffs' claim for a violation of the Consumer Fraud Act. The Consumer Fraud Act prohibits the use of unfair or deceptive business practices, "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2 (West 2006). The elements of a Consumer Fraud Act action are as follows:

"(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery*, 216 Ill. 2d at 180.

10

In the first amended complaint, the plaintiffs allege that Travelers misrepresented to them that Travelers was entitled to a PPO discount. To the extent that the plaintiffs are arguing that Travelers was not entitled to a PPO discount because it failed to steer the patients to the plaintiffs as required by any purported contracts, the plaintiffs are simply realleging a breach of contract, which is not actionable under the Consumer Fraud Act. *Avery*, 216 Ill. 2d at 169. To the extent that the plaintiffs are alleging that Travelers misrepresented the fact that it belonged to the First Health workers' compensation network, it is clear from the record that Travelers did belong to that network. Again, the preferred provider agreements plainly show that the plaintiffs contracted to receive discounted reimbursements for workers' compensation claims from payors that contract with First Health. The payor agreement produced under seal between Travelers and First Health's predecessor, HealthCare Compare, reveals that Travelers was a part of the workers' compensation network. In a deposition, Brian Jans of First Health also recognized Travelers as being a part of First Health's workers' compensation network, and the record includes First Health's workers' compensation client lists, which include Travelers as an Illinois workers' compensation payor. There is absolutely no dispute regarding whether Travelers and First Health had a payor agreement covering workers' compensation claims at the time that Travelers took the PPO discounts on the plaintiffs' bills. Accordingly, Travelers' statement to the plaintiffs on the EORs that it took a discount in accordance with the First Health network contract is not an actionable misrepresentation under the Consumer Fraud Act.

We next address the plaintiffs' claim for unjust enrichment. Although the decision in *Roche v. Travelers Property Casualty Insurance Co*., No. 07-cv-302-JPG (S.D. Ill. 2009) (unpublished order), is not precedential, we find Judge Gilbert's analysis to be highly persuasive. As Judge Gilbert recognized, in order to recover under a theory of unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the

11

plaintiff's detriment and that the defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience. *Roche*, No. 07-cv-302-JPG, order at 3 (citing *B&B Land Acquisition, Inc. v. Mandell*, 305 Ill. App. 3d 1068, 1073 (1999)). Here, the plaintiffs allege that Travelers retained a benefit to their detriment by not paying the full amount of the bills the plaintiffs submitted to Travelers on behalf of the injured workers and/or their employers. However, as explained above, the plaintiffs promised to accept those reimbursements from any payor in the First Health network, and the record establishes that Travelers was a part of that network. Moreover, the services the plaintiffs rendered were to the injured workers and/or their employers, not to Travelers. To the extent that a quasi-contract arose for the reasonable price of the plaintiffs' services, it arose between the plaintiffs and the injured workers and/or their employers, who are obligated by virtue of Illinois workers' compensation law to pay for the injured workers' treatment. To the extent that the plaintiffs are asserting their patients' right to workers' compensation coverage from Travelers, as the employer's insurer, they are bound to the exclusive remedy provisions of the Illinois Workers' Compensation Act (820 ILCS 305/18 (West 2006) (workers' compensation payment disputes must be submitted for determination to the Illinois Workers' Compensation Commission)).

As explained above, the record establishes that Travelers had a legal basis for taking the PPO discounts placed at issue by the named plaintiffs in this case in that the plaintiffs promised First Health or its predecessor, CCN, in their preferred provider agreements that they would accept reimbursements at discounted rates from payors, including workers' compensation payors, that First Health contracted with to be a part of its network. Despite their deposition testimony that they expected that every patient for whom discounts would be taken would be steered to them by the payor by the use of financial incentives, no such promise was contained in the preferred provider agreements or in the payor agreement

12

between Travelers and First Health's predecessor, HealthCare Compare.  Because the plaintiffs have not stated a valid claim for relief against Travelers, the circuit court abused its discretion in certifying the class.  See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007).

CONCLUSION

For the foregoing reasons, the order of the circuit court of Madison County granting the plaintiffs' motion for a class certification is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

NO. 5-08-0578

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| COY CHIROPRACTIC HEALTH CENTER, INC., RICHARD COY, D.C., and FRANK C. BEMIS & ASSOCIATES, d/b/a BEMIS CHIROPRACTIC, Individually and on Behalf of Others Similarly Situated, | ) ) ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 05-L-151 |
| TRAVELERS CASUALTY AND SURETY COMPANY and THE TRAVELERS INDEMNITY COMPANY, | ) ) ) ) | Honorable Daniel J. Stack, |
| Defendants-Appellants. | ) | Judge, presiding. |

**Opinion Filed**:                 March 14, 2011
**Modified Opinion on Denial of Rehearing Filed:**    May 9, 2011

**Justices**:           Honorable Stephen L. Spomer, J.

                     Honorable Bruce D. Stewart, J., and
                     Honorable James M. Wexstten, J.,
                     Concur

**Attorneys for Appellant**      Troy A. Bozarth, HeplerBroom LLC, 130 North Main Street, P.O. Box 510, Edwardsville, IL 62025, Robert C. Johnson, Sonnenschein, Nath & Rosenthal LLP, 7800 Sears Tower, 233 South Wacker Drive, Chicago, IL 60606, Lisa M. Lilly, Lisa M. Lilly, LLC, 20 South Clark Street, Suite 410, Chicago, IL 60603

**Attorneys for Appellee**      Robert W. Schmieder, II, LakinChapman, LLC, 300 Evans Ave., P.O. Box 229, Wood River, IL 62095-0229, Timothy F. Campbell, Campbell & McGrady Law Office, 3017 Godfrey Road, P.O. Box 505, Godfrey, IL 62035