2023 IL App (1st) 221251-U

SECOND DIVISION
November 14, 2023

No. 1-22-1251

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| HASSAN A. MUHAMMAD, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County, Illinois, County |
| | ) | Department, Law Division |
| | ) | |
| v. | ) | No. 2021 L 005408 |
| | ) | |
| ADAMS FAMILY TRUCKING, a/k/a | ) | Hon. Diane M. Shelley |
| Oneofthebest, MICHAEL ADAMS AND STATE | ) | Hon. Thomas M. Donnelly |
| FARM MUTUAL AUTOMOBILE INSURANCE | ) | Judges Presiding |
| COMPANY, | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse concurred in the judgment.
Justice McBride concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*: Affirmed. Dismissal of complaint was proper.

¶ 2    After allegedly purchasing a vehicle by auction in Arizona, plaintiff Hassan Mohammed hired defendant Adams Family Trucking (the Adams defendants) to deliver the vehicle to his home in Chicago. He also obtained insurance coverage for the vehicle with defendant State Farm Automobile Insurance Company (State Farm). The vehicle never arrived, at least not to plaintiff's home; plaintiff ultimately claimed that the Adams defendants stole his vehicle. The

Adams defendants, for their part, sued plaintiff in Arizona for breach of contract. So plaintiff contacted State Farm, requesting coverage for the stolen care and asking State Farm to defend him in the Arizona lawsuit. State Farm declined on both counts, and plaintiff sued.

¶ 3    After plaintiff tried three times to state a claim against State Farm, the trial court dismissed the second amended complaint with prejudice. Plaintiff, *pro se* on appeal as he was in the circuit court, appeals. We find no error in the circuit court's judgment and affirm.

¶ 4                                    BACKGROUND

¶ 5    We draw our facts from the allegations in the second amended complaint, which we accept as true at this stage. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006); *Cooper v. Dr. Martin Luther King Jr. Boys & Girls Club of Chicago*, 2021 IL App (1st) 192618, ¶ 3. For ease, we will refer to the second amended complaint as the "complaint" except where otherwise noted. (We will be examining earlier versions of the complaint later in this order.)

¶ 6    On March 2, 2021, plaintiff bought a 2011 Chevrolet pickup truck (the "vehicle") at a public surplus auction held by a sheriff in Arizona. Plaintiff contacted State Farm for insurance coverage on the vehicle. He spoke with a representative named Demetrius Barbee. State Farm issued plaintiff an insurance policy of "comprehensive coverage" for the vehicle effective March 5, 2021.

¶ 7    On that same day, March 5, plaintiff Muhammad arranged for transportation of the vehicle using Uship. Uship is an online marketplace where shipping customers and service providers can connect. Uship requires upfront payment for transports but holds the money until the shipment is delivered, at which point it pays the transporter.

¶ 8    Through Uship, plaintiff contracted with the Adams defendants for delivery of the vehicle to plaintiff's brother's house in Chicago for a price of $1,290 (a small portion of which

went to Uship for its middleman service). The Adams defendants picked up the vehicle from the sheriff's office but never delivered it to the requested destination.

¶ 9    From March 8 to March 13, the Adams defendants gave plaintiff "all kinds of excuses" for its delay in delivery. On March 11, a representative from Uship informed plaintiff that it had "concerns" about the Adams defendants and was placing the company "under review" but did not provide further explanation. But later that same day, plaintiff received a message from Uship that his vehicle had been delivered—which was not the case.

¶ 10    The next morning, March 12, the Adams defendants notified plaintiff that the vehicle was ready for pickup at an address in Melrose Park, a suburb of Chicago. Both plaintiff and Uship called and sent text messages to the Adams defendants to have the vehicle properly delivered, but to no avail. Uship advised plaintiff to contact the authorities, so plaintiff ultimately filed a report with the Chicago police department.

¶ 11    Within a day or so, plaintiff filed a claim for loss with State Farm. On May 12, State Farm denied the claim, stating that it was "questionable whether a loss, as defined in the policy, has occurred."

¶ 12    In early April 2021, plaintiff learned that the Adams defendants had sued him in Arizona, alleging his refusal to pay for the delivery of the vehicle. Plaintiff asked State Farm to defend him in that action, claiming that the lawsuit was "an action in furtherance and in continuation of their original fraud and theft."

¶ 13    On May 12, 2021, Defendant State Farm denied plaintiff's claim, stating that it was "questionable whether a loss, as defined in the policy, has occurred." At no time did State Farm defend plaintiff in the Arizona lawsuit, either.

¶ 14    Plaintiff filed a multiple-count complaint in the circuit court of Cook County against the Adams defendants and State Farm. As State Farm is the only party to this appeal, we will limit our discussion accordingly. The complaint at issue—the second amended complaint—contains counts against State Farm. Count 1 sounds in breach of contract for failure to cover the loss of the vehicle, including claims of unreasonable and vexatious behavior and a request for both compensatory and punitive damages. Count 2 was a claim for declaratory judgment for a declaration that State Farm owed plaintiff coverage for the loss of the vehicle and a duty to defend plaintiff in the Arizona lawsuit; this count likewise sought both compensatory and punitive damages.

¶ 15    In count 3, plaintiff sued for "Failure to defend and bad faith." This count essentially reiterated count 2, asking for a declaration that State Farm breached its duty to defend and its obligation to cover the loss of the vehicle by theft. Again, plaintiff prayed for compensatory and punitive damages. Count 7, entitled "Failure to defend and bad faith," was limited to State Farm's allegedly vexatious refusal to defend plaintiff in the Arizona lawsuit, once more seeking compensatory and punitive damages. In count 8, plaintiff alleged that State Farm's vexatious refusal to cover the loss of his vehicle and its refusal to defend plaintiff in the Arizona lawsuit constituted violations of the Consumer Fraud and Deceptive Business Practices Act.

¶ 16    Count 9 sounded in fraudulent misrepresentation in that State Farm promised him full coverage of his new vehicle but knew that promise was false. Finally, count 10 sought to certify a class action against State Farm.

¶ 17    There were two rounds of amendments, prompted in each instance by a dismissal without prejudice of this *pro se* complaint. Where necessary later, we will get into the details of those previous complaints.

¶ 18    Ultimately, *sua sponte*, the court dismissed the complaint under review—the second amended complaint—with prejudice under section 2-615 of the Code of Civil Procedure. See 735 ILCS 5/2-615 (West 2020). As the claims against the Adams defendants remained, the court entered language pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) allowing immediate appeal of the dismissal of all claims against State Farm. And thus this appeal.

¶ 19                                    ANALYSIS

¶ 20    A section 2-615 motion to dismiss challenges the sufficiency of a complaint on its face. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). The court presumes the truth of all well-pleaded allegations and construes them with all reasonable inferences in favor of the plaintiff. *Marshall*, 222 Ill. 2d at 429. Dismissal is proper only if no set of well-pleaded facts would entitle the plaintiff to judgment. *Cooper*, 2021 IL App (1st) 192618, ¶ 21.

¶ 21    Our review is *de novo*, meaning we do not defer to the trial court's judgment. *Id*. We review the court's judgment, not its reasons. *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 21. We may affirm on any basis in the record. *Sherman v. Township High School District 214*, 404 Ill. App. 3d 1101, 1107 (2010). It is for these reasons that our review is not hampered by the lack of a transcript or a lack of reasoning in the trial court's judgment order. *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 223 (2008).

¶ 22    Plaintiff assigns five points of error on appeal. He does not appear to cover all the counts that were dismissed; he does not appear to ever claim error in the dismissal of count 2 (declaratory judgment) or the counts related to bad-faith denial of coverage.

¶ 23    State Farm, for its part, has dutifully covered every single count of the second amended complaint (and of the original and first amended complaints), explaining why each was properly dismissed. But we are a court of review, limited to the assignments of error put before us. Thus,

to the extent that plaintiff does not challenge the dismissal of various counts on appeal, he has forfeited any review of those portions of the trial court's ruling, and we will not consider them further. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued on appeal are forfeited); *Vancura v. Katris*, 238 Ill. 2d 352, 369, 345 Ill.Dec. 485, 939 N.E.2d 328 (2010) ("this court has repeatedly held that the failure to argue a point in the appellant's opening brief results in forfeiture of the issue"); *Tuna v. Wisner*, 2023 IL App (1st) 211327, ¶ 54 ("Forfeiture applies with particular force to an appellant because, while we may affirm a judgment on any basis in the record, even if not argued on appeal, we may not *reverse* on any basis in the record; the issue must be raised and argued to us." (Emphasis in original.))

¶ 24                    I. Contract Claims of Original and First Amended Complaint

¶ 25    We mentioned above the five points of error plaintiff assigns. In reality, three points of error are directed at the same issue, objecting to the same ruling by the trial court but at different stages (the original complaint, the first amended complaint, and finally, the second amended complaint.)

¶ 26    Throughout the litigation below, plaintiff has insisted that his contract with State Farm consisted not of his insurance policy but of the insurance card—a wallet-sized card roughly the dimensions of a credit card or driver's license—that State Farm sent him. State Farm moved to dismiss the original complaint because plaintiff failed to attach the policy to his complaint, citing the familiar rule that a complaint for breach of a written contract must attach that written contract. See 735 ILCS 5/2-606 (West 2020) ("If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her.").

¶ 27    Plaintiff told the court that he did not have a copy of the policy. So while she dismissed the complaint, Judge Shelley, not wanting a *pro se* litigant's claim to suffer over a technical defect, ordered State Farm to give him a copy of the policy. State Farm did so, and plaintiff attached a copy of the policy to the first amended complaint.

¶ 28    But despite attaching the policy to the complaint, plaintiff once again alleged, in his first amended complaint, that the insurance card he received in the mail constituted his contract with State Farm. According to plaintiff, the new judge handling the matter, Judge Donnelly, confirmed with plaintiff that he was, in fact, continuing to take the position that the insurance card, not the policy, was his contract. Plaintiff said yes, his position remained the same; indeed, he said, he had never received a copy of the State Farm policy. The allegations in count 1 of the first amended complaint confirm that plaintiff was continuing to adhere to his position that the insurance card was the operative contract in this case:

> "The Illinois insurance card provided by Demetrius Barbee, on behalf of Defendant State Farm to Plaintiff was the only document provided to the Plaintiff and represented a binding contract between the parties.
>
> ***
>
> Pursuant to the Illinois insurance card and the representations of Demetrius Barbee, State Farm agent Defendant State Farm provided the Plaintiff with insurance coverage which covered the loss of his vehicle by theft.
>
> Pursuant to the Illinois insurance card and the representations of Demetrius Barbee, State Farm agent Defendant State Farm is obligated to cover Plaintiffs' loss by theft."

¶ 29    Judge Donnelly struck the complaint without prejudice, granting plaintiff leave to replead. Plaintiff did so, resulting in the second amended complaint that was dismissed with

prejudice, a ruling before us now on appeal.

¶ 30     But two of plaintiff's five assignments of error relate to those previous rulings. Judge
Shelley, he argues, erred in dismissing the original complaint's contract claims, as did Judge
Donnelly in dismissing them in the first amended complaint. Unfortunately, while we may
review the dismissal of the second amended complaint, we may not review the dismissal of
earlier versions of the complaint. The rule is "clear and well settled" that " 'a party who files an
amended pleading waives any objection to the trial court's ruling on the former complaints,' and
' "[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading,
the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned
and withdrawn." ' " *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17 (quoting *Foxcroft Townhome
Owners Ass'n v. Hoffman Rosner Corp.,* 96 Ill. 2d 150, 153 (1983), quoting *Bowman v. County
of Lake,* 29 Ill. 2d 268, 272 (1963)).

¶ 31     Had plaintiff wished to stand on the allegations of his original complaint, he could have
specifically incorporated or adopted the earlier claim by reference in his amended pleading. See
*Bonhomme*, 2012 IL 112393, ¶ 17; *Foxcroft*, 96 Ill. 2d at 153. Or he could have refused to amend
and asked the court to dismiss the complaint with prejudice so that he could secure appellate
review of that dismissal. *Northwest Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d)
210234, ¶ 36. Or, finally, he could have amended the complaint as to the other dismissed counts
but sought immediate appellate review of the dismissal of the contract count by asking the circuit
court to include language under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) allowing
him to do so. See *id*.

¶ 32     Plaintiff did none of those things. So as a technical matter, we cannot and will not review
the judgment orders dismissing the original or first amended complaint. The good news for

plaintiff, however, is that as a practical matter, he loses very little in this regard, because his second amended complaint—the dismissal of which is properly before us—continues to allege the same contract theory alleged in the first two versions of the complaint. He continues to allege that the wallet-sized insurance card was the operative contract at issue here. So in the course of our review of the claims in the second amended complaint, plaintiff will have his opportunity to argue his theory of breach of contract.

¶ 33                    II. Contract Claims in Second Amended Complaint

¶ 34    In the second amended complaint, plaintiff alleges that the trial court erred in dismissing his breach-of-contract count in which plaintiff alleged that the insurance card State Farm sent him, not the policy itself, was the binding contract in this case. For several reasons, we reject his argument. The first is forfeiture for failure to cite controlling case law supporting his position. Second, in any event, the insurance card did not constitute a binding contract. Third, even if it did, plaintiff has cited to no specific provision contained on the insurance card that was breached. And fourth, the policy that plaintiff attached to his second amended complaint, by its plain terms, was not breached, in any event. We elaborate below.

¶ 35    First, plaintiff cites no case law suggesting that an insurance card sent by the insurer is a contract between insurer and insured. We would be within our rights to find the argument forfeited on this ground, even though the appellant here is *pro se*. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires that the appellant supply a cohesive legal argument and pertinent authority to avoid forfeiture of a point of error, and the fact that an appellant is *pro se* does not excuse noncompliance. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5.

¶ 36    In any event, forfeiture aside, we agree with the trial court's ruling for several reasons. To start, the insurance card is not a contract. It is an evidentiary document, created by state law,

namely the Illinois Vehicle Code. Every vehicle owner must carry proof of mandatory automobile insurance in the vehicle, including but not limited to an insurance card provided by the insurer. See 625 ILCS 5/7-602 (West 2020) ("Every operator of a motor vehicle *** shall carry within the vehicle evidence of insurance. The evidence shall be legible and sufficient to demonstrate that the motor vehicle currently is covered by a liability insurance policy *** and may include, but is not limited to, the following: (a) an insurance card provided by the insurer under this section ***.").

¶ 37    Section 7-602 requires an insurer to provide each insured with an insurance card. *Id*. The Secretary of State promulgates rules governing the form, content, and issuance of the insurance cards. *Id*.; see 50 Ill. Admin. Code § 8010.20 (eff. October 15, 1991). But state law is not silent on the content; notably, the law provides that "[t]he insurance card shall contain the following disclaimer: 'Examine policy exclusions carefully. *This form does not constitute any part of your insurance policy*.' " (Emphasis added.) 625 ILCS 5/7-602 (West 2020).

¶ 38    State law, in other words, mandates the issuance of these insurance cards to allow a motorist to show evidence of compliance with mandatory automobile liability insurance coverage—*evidence* of coverage, not coverage itself. *Id*. And if it is not clear enough that this card is not a contract between insurer and insured, state law specifically requires that the insurer say so right on the card.

¶ 39    Indeed, the insurance card State Farm issued plaintiff, which was attached as an exhibit to the complaint, contains that very disclaimer in bold, italics, and all-capitalization: "***EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.***" (Emphasis in original.)

¶ 40    Plaintiff is hard-pressed to claim that this insurance card is a contract when the state

statute responsible for its creation says it is not; when state law required *State Farm* to say it is not; and when the insurance card State Farm sent plaintiff *said* it was not.

¶ 41    Even if we indulged the notion further, plaintiff's claim would still fail. For example, plaintiff cites no provision of the insurance card that State Farm allegedly breached. To state a claim for breach of contract, plaintiff must plead (1) the existence of an enforceable contract; (2) performance by the plaintiff; (3) breach of a provision of the contract by the defendant; and (4) damages proximately resulting from the breach. *Nielsen v. United Services Automobile Ass'n*, 244 Ill. App. 3d 658, 662 (1993). "Particularly, in pleading a cause of action for breach of contract to provide insurance, a plaintiff must allege facts indicating the particular terms of the policy that the insurance company breached." *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 407 (2002); accord *Nielsen*, 244 Ill. App. 3d at 662. The second amended complaint does not identify a specific term or provision that State Farm breached.

¶ 42    And that is because, quite simply, the card does not *contain* any terms or provisions. At most, it contains a very general outline of the coverage—sufficient, as is its purpose, to provide proof of minimum insurance coverage but nothing more. See 625 ILCS 5/7-602 (West 2020). Any Illinois resident who owns a car will probably be familiar with the format. The front side of the card simply outlines in general terms, by code letters (here, A, C, D, G, and "U,W"), the coverage the motorist has purchased. The back side has nothing of substance regarding the policy terms except a key to help explain the code letters (Liability, Collision, Uninsured Motorist, etc.) on the front page—a key that is preceded, by the way, by this language: "How to identify your coverage. *See policy for full name and definition.*" (Emphasis added.) In sum, plaintiff could not possibly draw anything of substance from these generalities and, as we have noted above, did not even attempt to do so in the second amended complaint.

¶ 43     Finally, there is the insurance policy attached to the second amended complaint. Throughout this litigation, State Farm has insisted, quite reasonably, that this policy is the operative contract between State Farm and plaintiff. But even were we to assume that was true, over plaintiff's vehement objection, dismissal still would be proper. First, for the reason we already gave with regard to the theory that the insurance card was the contract: plaintiff has cited no provision in the insurance policy that State Farm breached in failing to defend him in the Arizona lawsuit or in failing to cover his loss of the vehicle by theft. See *Weis*, 333 Ill. App. 3d at 407; *Nielsen*, 244 Ill. App. 3d at 662.

¶ 44     But State Farm, for its part, has identified specific provisions in the policy demonstrating that it owed no duty of defense or coverage of any sort for the losses alleged by plaintiff. For example, on page 31 of the policy, under the heading "Exclusions," the policy excludes from coverage any theft of a covered vehicle when that theft is committed by a person who obtains possession of the vehicle with the insured's permission. The second amended complaint specifically alleges that plaintiff "authorized" the Adams defendants to take possession of the vehicle.

¶ 45     As for its alleged duty to defend plaintiff in the Arizona lawsuit in which the Adams defendants sued plaintiff for breach of contract for not paying for the vehicle's delivery, State Farm first notes that the second amended complaint admits that this lawsuit was dismissed almost immediately. Indeed, the second amended complaint alleges that plaintiff first learned of the Arizona lawsuit on or about April 6, 2021, but he continues to allege that this lawsuit was dismissed little over a month later, on May 21. Plaintiff thus admits that he suffered no damages for any alleged failure by State Farm to defend that suit, and he cannot sustain a contract action absent any such damages. See *Nielsen*, 244 Ill. App. 3d at 662 (to recover for breach of contract,

plaintiff must allege and prove damages proximately resulting from breach).

¶ 46    In any event, State Farm points to a provision in the policy providing that State Farm owes a duty to defend the insured only when the insured is sued for "damages payable under this policy's Liability Coverage." Yet coverage is limited to an insured's liability for "bodily injury to others" or "damage to property" that is "caused by an accident that involved a [covered] vehicle." Here, in contrast, the second amended complaint alleges that the Arizona lawsuit was a breach-of-contract action "alleging the Plaintiff refused to pay for the delivery of the Plaintiff's vehicle," not a suit for personal injury or property damage stemming from a car accident.

¶ 47    For all the reasons we have given above, independently and together, we find no merit to plaintiff's contract claim. It was properly dismissed.

¶ 48    This misguided theory of "contract" permeated several counts. The obvious one is count 1, breach of contract. But that same theory was necessary to other counts, namely the claims for declaratory judgment (count 2) and "failure to defend and bad faith" (counts 3 and 7). As we noted earlier, it is not clear to us that plaintiff has asked us to overturn the dismissal of counts 2, 3, and 7. If he has not done so, as we wrote above, he has forfeited any challenge to the dismissal of those counts, and we uphold those rulings based on forfeiture.

¶ 49    If, in fact, in his appellate argument promoting his theory of "contract," plaintiff was attempting to argue that counts 2, 3, and 7 should not have been dismissed, either, then we reject that argument and uphold the dismissal of those counts for all the reasons we have stated above—in the various ways we have explained, the second amended complaint fails to properly allege the breach of an enforceable contract with State Farm.

¶ 50                                III. Fraud Claims

13

¶ 51    Plaintiff also claims that the court erred in dismissing new counts added in the second amended complaint alleging common-law fraud and a violation of the Consumer Fraud and Deceptive Business Practices Act (the Act). See 815 ILCS 505/2 (West 2020).

¶ 52                    A. Consumer Fraud and Deceptive Business Practices Act

¶ 53    To state a violation of the Act, the plaintiff must allege (1) a deceptive act or unfair practice (2) on which defendant intended for plaintiff to rely (3) that occurred in the course of trade or commerce and that (4) proximately caused plaintiff actual damages. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 180 (2005); *Coy Chiropractic Health Center, Inc. v. Travelers Casualty & Surety Co.*, 409 Ill. App. 3d 1114, 1122 (2011).

¶ 54    Regarding the first element, it is critical to note that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery*, 216 Ill. 2d at 169. The supreme court explained the rationale, quoting an appellate decision:

> " 'What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. [Citations.] We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.' " *Id*. (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000)).

¶ 55    Thus, in *Avery*, the supreme court held that, "[a]s a matter of law, plaintiffs' consumer

fraud claim may not be based on the assertion that State Farm breached its promise to restore plaintiffs' vehicles to their "pre-loss condition" or that State Farm breached its promise to repair plaintiffs' vehicles using parts of 'like kind and quality.' " *Id*. at 170.

¶ 56    With that in mind, the second amended complaint alleges that State Farm was deceptive when it:

(1) "denied of [*sic*] coverage based upon a document/policy, the so-called 'car policy' that was never provided to the Plaintiff at the time of purchase of the insurance policy."

(2) "denied of coverage [*sic*] based upon a document/policy, the so-called 'car policy' that the Defendant did not inform the Plaintiff of at the time of purchase of the insurance policy."

(3) "failed to give equal consideration to the Plaintiff's interest under the circumstances."

(4) "refused to defend the causes of action filed against the Plaintiff in Maricopa County Justice Courts Arrowhead Justice Court in Arizona."

(5) "conducted an inadequate investigation in defense of the Plaintiff."

(6) "conducted an inadequate investigation solely for the purpose of denying coverage of and defense for the Plaintiff."

¶ 57    These allegations are nothing more than re-treads of plaintiff's contract claim. The failure to defend (# 4) is premised on State Farm owing a *contractual* duty to do so. Conducting inadequate investigations or doing so for the purpose of denying coverage (## 5-6) is just another way of saying that State Farm breached a duty in its contract. "Failing to give equal consideration to the plaintiff's interests" (# 3) is admittedly a bit harder to decipher, but whatever

it may be, it cannot possibly be deceptive. And a wrongful denial of coverage (## 1-2) is undoubtedly a contract-based claim; the denial could only be improper if the contract required State Farm to perform and State Farm failed to do so.

¶ 58     In other words, these are nothing more than claims of breach of contract. See *id*.; *Coy*, 409 Ill. App. 3d at 1122 ("To the extent that the plaintiffs are arguing that Travelers was not entitled to a PPO discount because it failed to steer the patients to the plaintiffs as required by any purported contracts, the plaintiffs are simply realleging a breach of contract, which is not actionable under the Consumer Fraud Act.").

¶ 59     Thus, though State Farm raises several other bases to support dismissal of count 8, it suffices that the second amended complaint does not adequately plead a deceptive act. We uphold the dismissal on that basis.

¶ 60                                 B. Common-Law Fraud

¶ 61     To state a claim for fraudulent misrepresentation, the plaintiff must allege (1) a false statement of material fact (2) that defendant knew was false (3) on which the defendant intended the plaintiff to rely and (4) on which the plaintiff in fact relied, (5) thereby causing damages resulting from that reliance. *Wernikoff v. Health Care Service Corp.*, 376 Ill. App. 3d 228, 234 (2007).

¶ 62     As defendants note, the alleged misrepresentation must be one of pre-existing or present fact and not opinion. *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 41; *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 387 (1993); *Gold v. Vasileff*, 160 Ill. App. 3d 125, 128 (1987) ("The representation must be to an existing or past fact."); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 768 (N.D. Ill. 2011) (applying Illinois law).

¶ 63    "A statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable misrepresentation." *Murphy-Knight*, 248 Ill. App. 3d at 387; see *Merrilees*, 2013 IL App (1st) 121897, ¶ 41 ("assurances as to future events are generally not considered misrepresentations of fact."); *Gold*, 160 Ill. App. 3d at 128 ("A failure to perform a promise to do some act in the future cannot be the subject of an action for fraud."); *Ault*, 232 Ill. App. 3d at 271 ("the alleged misrepresentations in the instant case concern future intentions or conduct on the part of the defendant. Because plaintiff has alleged broken promises by the defendant rather than material misstatements of fact, we find the original complaint failed to allege material misrepresentation of preexisting or present facts."); *Albright v. Starwood Retail Partners, LLC*, 20 CV 4552, 2021 WL 463066, at *5 (N.D. Ill. Feb. 9, 2021) (applying Illinois law) (defendant's "alleged misrepresentations that he would not dispute the size of his bonus were promises relating to future conduct" that were nonactionable).

¶ 64    Indeed, "misrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 168 (1989); see *Murphy-Knight*, 248 Ill. App. 3d at 387 ("Even a false promise of future conduct with no current intent to fulfill that promise will not constitute fraud."); *Gold*, 160 Ill. App. 3d at 127 (though attorney allegedly promised that client would perform terms and conditions of contract, and attorney allegedly knew or should have known that client would not so perform, claim for misrepresentation would not lie for "failure to perform a promise to do some act in the future"). In all instances, the context and circumstances under which the statement is made should be considered. *Murphy-Knight*, 248 Ill. App. 3d at 388; *Merrilees*, 2013 IL App (1st) 121897, ¶ 42.

¶ 65    Though count 9 attempts to plead each element, its only allegation of misrepresentation is this: "State Farm's representation to the Plaintiff and providing insurance cards without informing or providing the Plaintiff with the 'so called car policy' was a false representation that the Plaintiff was adequately insured against losses." That is not an actionable claim.

¶ 66    Telling an insured that its coverage is "adequate" is a statement of opinion, certainly in this context. We might have a different view, for example, if State Farm in fact was providing no coverage *at all* but claimed it was; but there is no dispute here that State Farm provided coverage. We might likewise feel different if what State Farm meant by "adequate" was that plaintiff had (at least) the minimum amount of coverage mandated by law, when in fact he did not. But again, there is no such claim here. Those examples would involve more concrete factual statements; either State Farm provided coverage or it did not; either the coverage met the minimum requirements of state law or it did not. Plaintiff's theory here, in contrast, is that the coverage was *not* adequate because State Farm did not cover the particular losses he sustained here. But that is merely his opinion. What is "adequate" is in the eye of the beholder. He is entitled to his opinion, but he is not entitled to maintain a fraud action over it.

¶ 67    Another way of explaining that this alleged representation was an opinion is that it is impossible to characterize it as "false" in the first place, as required. *Wernikoff*, 376 Ill. App. 3d at 234. An insurance policy is certainly not automatically "inadequate" merely because it does not cover a particular loss under specific circumstances. State Farm could obviously argue that the policy was "adequate" and reasonable, though it did not cover the losses alleged here.

¶ 68    For example, even if an insurance agent tells a potential insured that the policy covers "theft" of the car, it does not automatically follow that every claim of theft, in every conceivable instance, will be covered. Anyone who has glanced at an insurance policy or ever filed a claim

(much less litigated a lawsuit over coverage) knows that insurance policies have conditions and exclusions and definitions. Perhaps, hypothetically, the policy might provide that theft is not covered as actual "theft" if the "theft" is based on a contractual dispute between the insured and a third party who had permission to drive the vehicle, as arguably was the case here. But that does mean it is "false" when the insurer tells the insured that the policy generally covers "theft."

¶ 69     Yet another way of viewing this as an opinion would be to say that the alleged statement was one relating to future or contingent events, likewise not actionable. See *Murphy-Knight*, 248 Ill. App. 3d at 387 ("Statements regarding future events are considered opinions, not statements of fact."). Saying that insurance coverage is "adequate" is saying, in so many words, that the insured will be covered sufficiently if, in the future, circumstances dictate the need for coverage. In plaintiff's view, that promise of future behavior was broken. But "[b]ecause plaintiff has alleged broken promises by the defendant rather than material misstatements of fact" (*Ault*, 232 Ill. App. 3d at 271), his claim for fraudulent misrepresentation does not lie.

¶ 70     In any event, the alleged misrepresentation here was a nonactionable statement of opinion. Dismissal of the common-law fraud count was proper as well.

¶ 71                              IV. Class Certification

¶ 72     Thus far, we have upheld the dismissal of the counts premised on plaintiff's incorrect "contract" theory, as well as dismissal of the common-law and statutory fraud counts. That disposes of every count in the second amended complaint that is directed against State Farm, save one.

¶ 73     Count 10 of the second amended complaint requests certification of a class. Plaintiff argues that the court erred in denying certification. But given that we have upheld the dismissal of all substantive counts, there is no complaint for which a class could be certified. So we uphold

the dismissal of that count as well.

¶ 74                                    CONCLUSION

¶ 75    The judgment of the circuit court is affirmed in all respects.

¶ 76    Affirmed.

¶ 77    McBRIDE, J., concurring in part and dissenting in part:

¶ 78    While I agree with the majority's decision to affirm the dismissal of the plaintiff's second amended complaint, I write separately because we lack jurisdiction to review the orders dismissing plaintiff's original and first amended complaints without prejudice. Those non-final orders are not appealable under any Supreme Court Rule, we have no jurisdiction to review them, and those portions of this appeal should be dismissed.

¶ 79    Both plaintiff and defendant, State Farm, have cited different Supreme Court Rules, which they contend confer jurisdiction upon this court. Both parties extensively address the circuit court's dismissal orders of all three previously filed complaints, the plaintiff claiming the circuit court erred and State Farm arguing the circuit court did not commit any error.

¶ 80    Both parties assume that we have jurisdiction over all three dismissal orders. Plaintiff contends we have jurisdiction to review the dismissal orders from his original, first and second amended complaints, invoking Supreme Court Rules 301, 303 and 304(b). State Farm contends we have jurisdiction over this appeal and all three previously filed complaints under Supreme Court Rule 304(a).

¶ 81    However, even though the parties agree we have jurisdiction over an appeal, we have an independent obligation to consider our jurisdiction whenever it is in question. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 22; *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 41; *Navigators Specialty Ins. Co. v. Onni*

*Contracting (Chicago), Inc.*, 2022 IL App (1st) 210827, ¶ 7. In my opinion, this is a case where, despite the parties' agreement, this court lacks jurisdiction to consider the appeal from the dismissal of plaintiff's two earlier complaints.

¶ 82    Appellate jurisdiction is limited to the review of final judgments unless a final order falls within a statutory or Supreme Court Rule exception. *Department of Transportation ex rel. People v. 151 Interstate Road Corporation*, 209 Ill. 2d 471, 478 (2004), *as modified on denial of reh'g* (Apr. 15, 2004); *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 675 (2007).

¶ 83    As stated above, the parties contend that jurisdiction is conferred on this court by Supreme Court Rules 301, 303, and 304. Supreme Court Rule 301 states, in part, that "[e]very final judgment of a circuit court in a civil case is appealable as of right" Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 84    Supreme Court Rule 303 provides some of the procedural steps or rules in filing appeals from final orders. Ill. S. Ct. R. 303 (eff. July 1, 2017); *J.D.*, 376 Ill. App. 3d at 676.

¶ 85    Supreme Court Rule 304 deals with appeals from final orders that do not dispose of an entire proceeding. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016); *J.D.*, 376 Ill. App. 3d at 676; Specifically, subsection (a) of the Rule requires that the circuit court make an express finding that its final judgment as to one party or claim should be appealable before issues as to other parties or claims are finally adjudicated. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); *J.D.*, 376 Ill. App. 3d at 676. Subsection (a) provides:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may
> be taken from a final judgment as to one or more but fewer than all of the parties or
> claims only if the trial court has made an express written finding that there is no just
> reason for delaying either enforcement or appeal or both. *** In the absence of such a

finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 86    Subsection (b) of Rule 304 sets out that, in certain situations, an appeal can be taken from a final judgment as to one party or claim even without a special finding from the circuit court. Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). *J.D.*, 376 Ill. App. 3d at 676. In particular, subsection (b)(1), which plaintiff cites, among others, as a basis of our jurisdiction, allows appeals without a 304(a) finding, from "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 87    Although I agree that the circuit court's order dismissing the second amended complaint with prejudice is properly before this court under Supreme Court Rule 304(a), the earlier complaints were dismissed without prejudice and are not appealable under any Supreme Court Rule. *Paul H. Schwendener, Inc. v. Jupiter Electric Company*, 358 Ill. App. 3d 65, 73 (2005) ("An order dismissing an action 'without prejudice' is not deemed final for purposes of appeal.").

¶ 88    While Supreme Court Rule 304(a) confers us with jurisdiction to consider whether the second amended complaint was erroneously dismissed, that same rule does not confer jurisdiction on this court to review either of the two earlier pleadings that were dismissed without prejudice.

¶ 89    Because both complaints were dismissed without prejudice, neither one was a final order, and we lack jurisdiction to review the two orders and we should so hold. *Schwendener*, 358 Ill.

22

App. 3d at 73 (an order dismissing a count without prejudice was not a final and appealable order, and the appeal from that order was dismissed for lack of appellate court jurisdiction.)

¶ 90    Rather than address our jurisdiction, the majority holds that "while we may review the dismissal of the second amended complaint, we may not review the dismissal of earlier versions of the complaint." The majority cites the "well settled" rule that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." The majority then continues with, "[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn," citing *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corporation*, 96 Ill. 2d 150, 153 (1983); *Northwest Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 272.

¶ 91    Although the majority accurately recounts the general pleading rules set forth in the decisions it relies upon, the complaints or portions of previously dismissed counts of a complaint at issue in those appeals were dismissed with prejudice. See *Bonhomme*, 2012 IL 112393, ¶ 1 (plaintiff sought review of the "dismiss[al] with prejudice" of six counts from its second amended complaint, prior to the later dismissal with prejudice of its third amended complaint); *Foxcroft Townhome Owners Association*, 96 Ill. 2d at 152 (where the supreme court reviewed the final judgment after summary judgment had been granted in favor of the defendant and certain counts had been dismissed. The defendant argued in both the appellate court and supreme court that the plaintiff abandoned the earlier claims by pleading over them.); *Northwest Illinois Area Agency on Aging*, 2022 IL App (2d) 210234, ¶ 27 ("On appeal, plaintiff argues that the trial court improperly dismissed with prejudice count III of its original complaint as well as all six counts in its first amended complaint"). Significantly, the procedural postures of the previously

filed complaints in those appeals are unlike the procedural posture of the two previously filed complaints in this appeal. Those decisions are distinguishable on their facts, since the reviewing courts were not considering the review of the non-final orders, being appealed here.

¶ 92    The above cases are also distinguishable because those reviewing courts were not considering appeals which had been certified under Rule 304(a), as is the case here. As set forth above, Rule 304(a) appeals are limited to the review of "a final judgment" as to a party or claim. Accordingly, the trial court would have had no authority to certify an appeal on the earlier dismissals without prejudice (*Paul H. Schwendener, Inc.*, 358 Ill. App. 3d at 73 (orders dismissing an action without prejudice are not final)), and the Rule would not permit this court to review orders other than the final order in which the court made the express finding.

¶ 93    Disposing of the earlier versions of plaintiff's complaints, as the majority has, oversimplifies this appeal, and does not take into account the difference between a dismissal with prejudice that can result in an order being final and appealable, and a dismissal without prejudice which is not a final and appealable order. More importantly, the majority's reasoning disregards our independent obligation to consider our own jurisdiction and dismiss an appeal when we lack jurisdiction. *Schwendener*, 358 Ill. App. 3d at 65, 73; *People v. Smith*, 228 Ill. 2d 95, 104 (2008) ("A reviewing court has an independent duty to consider issues of jurisdiction, regardless of whether either party has raised them.").

¶ 94    Further, in the *Smith* case, the Illinois Supreme Court reminded reviewing courts that "the ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case. The other is to determine which issue or issues, if any, have been forfeited." *Smith*, 228 Ill. 2d at 106.

¶ 95    As for the other pleading options the majority cites from the *Foxcroft Townhome Owners*

*Association* and *Northwest Illinois Area Agency on Aging* appeals, which the majority holds were available to the plaintiff, and which plaintiff did not take advantage of, those options are inapplicable here when the breach of contract allegations contained in the first and second amended complaints, were also included in some form in the second amended complaint.

¶ 96    Since it is well established that we lack jurisdiction to review the dismissal without prejudice of the two earlier filed complaints, as those dismissals were interlocutory and non-final, we should dismiss, in part, those portions of the appeal that concern those two orders while still affirming the circuit court's dismissal of the second amended complaint.

¶ 97    As to the majority's resolution and reasoning affirming the trial court's dismissal of all the counts in the second amended complaint, as stated above, I concur.

¶ 98    Therefore, most respectfully, I concur in part and dissent in part.